THE STATE OF KANSAS, *ex rel. S. C. Miller, County Attorney of Wyandotte County*, v. THE CITY OF KANSAS CITY *et al.*

#### No. 11191.

1. CITIES— *Street Improvements — Conditions Precedent.* Cities of the first class have no power to contract for the pavement of streets and to charge the cost of the improvement against the abutting property in the form of special assessments, and to issue bonds in payment of the contract price, unless a petition therefor has been presented to the mayor and city council signed by the resident owners of a majority of the front feet abutting on the street to be improved; nor do such cities have the power to contract for the pavement of streets and to issue bonds therefor payable generally out of the taxes levied upon all the property within the city, unless authorized by vote of the electors.

2. ——— *Unauthorized Bonds — County Attorney.* The county attorney of a county in which a city of the first class is situated may maintain an action in the name of the state to enjoin the unauthorized issuance of bonds by the officers of the city.

Error from Wyandotte court of common pleas; W. G. HOLT, judge. Opinion filed May 6, 1899. Reversed.

*E. A. Enright*, county attorney, and *Nathan Cree*, for plaintiff in error.

*T. A. Pollock*, city counselor, and *F. D. Hutchings*, city attorney, for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action by the state of Kansas, on the relation of the county attorney of Wyandotte county, against the city of Kansas City, to enjoin it from entering into a contract for the paving of certain streets, and from issuing bonds in payment for the same. The application for a temporary injunction was denied, and the state, by the county attorney, prosecutes error to this court. The questions

presented by the plaintiff in error are : (1) Whether a city of the first class may lawfully issue bonds for street paving, payable by special assessments upon the abutting property, without a petition for the making of such improvements signed by the resident owners of a majority of the front feet abutting upon the street to be improved having been presented to the mayor and city council; (2) whether, for the paving of streets in a city of the first class, bonds payable otherwise than by special assessments upon the abutting property may be issued without a vote of the electors of the city authorizing them — that is, whether without such vote they may be issued for such purpose, chargeable generally upon the property in the city. The last question is the one principally discussed by counsel for plaintiff in error, but the first question is the one principally discussed by counsel for defendants in error, and it is not clear from the record whether the city was about to issue the one class of bonds or the other. However, the allegations of the petition for injunction are sufficient to challenge the right of the city to issue bonds of either kind without the occurrence of the conditions precedent mentioned.

Our conclusion is that a city of the first class has no right to issue either kind of bonds without the occurrence of such precedent conditions. There has been much legislation upon the subject of the making of street improvements in cities of the first class and the method of payment therefor. Many statutory provisions have been enacted and subsequently supplemented, or amended, or repealed. The provisions pertaining to the subject under consideration necessary to be noticed for purposes of explanation are as follows, reference being made for greater convenience

to the General Statutes of 1889 and subsequent session laws: Paragraph 555, General Statutes of 1889 (Gen. Stat. 1897, ch. 32, § 88), provides, among other things, that the mayor and council shall have power to levy and collect taxes upon all the property within the limits of the city "for general-revenue purposes, not to exceed six mills on the dollar in any one year; for general improvements, excepting sewerage and improvements for which special assessments are levied, not to exceed six mills on the dollar in any one year." It will thus be seen that provision has been made for raising a fund for the making of "general improvements" in the city.

Paragraph 557, General Statutes of 1889 (Gen. Stat. 1897, ch. 32, §§ 163–165), provides:

"For opening, widening, extending and grading any street, lane, alley, or avenue, and for doing all excavating and grading necessary for the same, and for all improvements of the squares and areas formed by the crossing of streets, and for building culverts, bridges, viaducts and all crossings of streets, alleys, and avenues, the cost or contract price thereof shall be paid out of the general-improvement fund, except as otherwise provided by law; and for all paving, macadamizing, curbing and guttering of the streets and alleys, the assessments shall be made for the full cost thereof on each block separately."

Other provisions of this paragraph and also paragraph 558 following (Gen. Stat. 1897, ch. 32, §§ 166, 180, 181), explain in detail the method by which the cost of paving, macadamizing, curbing and guttering the streets is charged against and collected from the abutting property, and paragraph 559 designates the charge made against abutting property for paving and macadamizing streets as "special assessments for improvements." It will thus be seen that the three

paragraphs of the statute last quoted divide street improvements, in respect to the method of paying therefor, into two classes — one class consisting of opening, widening, extending, grading, and excavating, improving the squares and areas formed by street crossings, and in building bridges, culverts, viaducts, etc.; the other consisting of paving, macadamizing, curbing, guttering, etc. As to the first-mentioned class of improvements, it is specifically provided that the cost thereof "shall be paid out of the general-improvement fund, except as otherwise provided by law"; that is, out of the six mills annual levy authorized by para-. graph 555 for "general improvements." As to the other class, it is specifically provided that the cost thereof shall be paid by assessments upon the abutting property. Paragraph 586, General Statutes of 1889 (Gen. Stat. 1897, ch. 35, §§ 17, 18), declares:

"For the purpose of paying for any improvement of a general nature in the city *not herein otherwise provided for*, and for the construction of water-works and water-power, the mayor and council may from time to time borrow money and issue bonds therefor, but no money shall be borrowed or bonds issued until the city council shall be instructed to do so by two-thirds of all the votes cast at an election held in such city for that purpose."

The first three sections of the General Statutes of 1889 above cited are provisions of chapter 37 of the Laws of 1881, as amended by chapter 99 of the Laws of 1887. The two sections last cited from the General Statutes of 1889 are provisions of chapter 37 of the Laws of 1881, which law of 1881 was a general codification of the laws pertaining to cities of the first class, and is the basis for most of the subsequent legislation relating to such cities. Paragraph 590 of the General Statutes of 1889 is an enactment of the legislative ses-

sion of 1887, separate from chapter 99 of that year, which, as stated, was amendatory of chapter 37 of the Laws of 1881. It pertains, however to the making of street improvements in cities of the first class, and provides that for grading, curbing, guttering, paving, repaving, etc., the cost of which is chargeable to abutting property, the mayor and city council may provide payment by instalments of special assessments, and for such instalments may issue improvement bonds of the city. It further provides as follows :

"For the cost of such improvements as are made payable out of the general-improvement fund of the city, the mayor and council may also issue bonds of the same tenor and effect, and under the same restrictions, as those hereinbefore mentioned, and such bonds and interest thereon shall be paid by the levy of a general tax on all the property of the city."

It will be observed, however, that under the provisions just quoted the mayor and council may not issue bonds except to pay for "such improvements as are made payable out of the general-improvement fund," and such improvements so made payable out of the general-improvement fund are, as stated in paragraph 557, *supra*, before quoted, the opening, widening, extending and grading of streets, etc., not the paving, macadamizing, curbing and guttering of streets. Provision for the payment for such last-mentioned improvements is, by the section last cited, to be made by special assessments upon the abutting property.

To return, however, to paragraph 590, *supra*. This section provides for the issuance of bonds to pay for street improvements. It designates them "improvement bonds of the city," and declares that "the credit of the city issuing such bonds shall be pledged for the payment thereof." This statute does not provide for a general vote of the electors of the city, or a petition

of the abutting property owners as a condition precedent to the issuance of the bonds, and it might, except for subsequent legislation, be supposed to authorize the issuance of bonds without a vote or petition therefor. It is to be observed, however, that the expense of the improvement for which bonds may be issued is chargeable against the abutting property through the method of special assessments. Up to the time of the enactment of this statute, and until 1891, so far as we have been able to observe, no provision had ever been made for taking the sense of abutting property owners upon the question of the desirability of street improvements or their willingness to pay for the same; however, in 1891, by section 6, chapter 73, of the laws of that year (Gen. Stat. 1897, ch. 32, § 171 ), it was provided, as conditions precedent to the levy of special taxes for curbing, guttering, paving, macadamizing streets, etc., that the mayor and council should by resolution declare the necessity for such improvements, and should make newspaper publication of the resolution. It also specifically provides that such resolution " shall not be valid unless a petition asking for such improvement has been ordered spread upon the journal, which petition must be signed by the owners of a majority of the front feet abutting upon the street to be improved." This law of 1891 was amended in some particulars by chapter 274 of the Laws of 1895, but not in respect to the necessity for a petition by the abutting property owners.

From the various statutory provisions to which we have called attention, it is quite plain that if the bonds which the city was about to issue were to have been bonds payable by special assessments or special taxes upon the abutting property, their issuance without a precedent petition by the abutting property owners

for the making of the improvement in question would have been unlawful. The answer of the city to the petition for injunction admits that no such petition had been presented to the mayor and city council; hence the bonds may not be issued as bonds payable by special assessments. If the bonds in question were not to be paid out of special assessments, but were to be payable by general taxes levied on all the property in the city, it is likewise evident that their issuance would be unlawful without the authority of a vote of the electors of the city, as required by paragraph 586, *supra*. Whether street paving within the meaning of that section is an "improvement of a general nature," so as to justify the issuance of bonds even by a vote of the electors, we need. not inquire. Some of the language of the opinion in *City of Wyandotte v. Zeitz*, 21 Kan. 649, indicates that street paving is a "general improvement" within the meaning of that phrase. Without so deciding, but assuming for the purpose of meeting the contention of defendant in error in this case that street paving is a general improvement, it nevertheless results from the express provisions of paragraph 586, *supra*, that bonds in payment therefor may not be issued except upon the authority of a vote of the electors of the city. Nor can they be issued under the last sentence of paragraph 590, *supra*, in payment for such improvements, without a precedent vote of the electors of the city. The bonds authorized by that portion of that section can only be issued in payment for "such improvements as are made payable out of the general-improvement fund of the city"; and, as hereinbefore pointed out, improvements the cost of which is made payable out of the general-improvement fund are the opening, widenening, extending and grading of streets, etc., not the

paving of them, which is the improvement contemplated by the defendant in error in this case. See paragraph 557, *supra*, before quoted. The power to issue municipal bonds exists only when expressly conferred, or when necessarily implied; that is, when it is a necessary means to the execution of some other power which is expressly conferred. The authorities are uniform to this effect. (*Waxahachie v. Brown et al.*, 67 Tex. 519, 4 S. W. 207; *Hopper v. Town of Covington*, 8 Fed. 777; *Brenham v. German American Bank*, 144 U. S. 173, 12 Sup. Ct. 975.)

The defendants in error raise a question as to the right of the county attorney to undertake the maintenance of the petition for injunction in the name of the state. Municipal corporations are as much creatures of the state as the public corporations called counties, townships, etc., and as to them the state can exercise its restraining power to prevent violations of the public trusts committed to their officers. (*The State, ex rel., v. Comm'rs of Marion Co.*, 21 Kan. 420.) The prevention of like breaches of trust by the officers of municipal corporations is also the duty of the attorney-general of the state, or other public counselors. (2 Dillon, Mun. Corp., 3d ed., §§ 909, 910.)

The defendants in error object to the consideration of the record brought here by the plaintiff in error because, as claimed, it shows no proper exceptions to the orders of the court below. We have given thought to this objection. It is, however, not well founded.

The judgment of the court below is reversed, with directions to issue against the defendant city a temporary injunction, as prayed for in the plaintiff's petition, and for further proceedings in the case in conformity with this opinion.