· THE CITY OF CLAY CENTER V. A. L. WILLIAMSON *et al.*

No. 15,837.   (100 Pac. 59.)

SYLLABUS BY THE COURT.

1. DAMAGES—*Action on Injunction Bond.* In an action on an' injunction bond only those damages which are the direct and proximate result of the injunction are recoverable.

2. —————— *Remote—Injunction—Sale of Municipal Bonds.* Where a temporary injunction restrains a city from issuing or disposing of certain bonds for the purpose of erecting and equipping an electric lighting plant, damages alleged to have been caused by the increased cost of machinery and building material during the time the injunction remained in force are too remote and can not be recovered.

3. —————— *Enjoining Sale of Bonds—Depreciation in Value.* In such an action, where it is alleged that during the pendency of the injunction the market value of the specific bonds depreciated, the difference between the market value of the bonds at the time the injunction was granted and their market value at the time the injunction was dissolved is a proper element of damages, for the reason that the loss occasioned by the depreciation is the direct and proximate result of the injunction.

4. INJUNCTION—*Indemnity Bond—Action by the State.* Section 242 of the code of civil procedure, which provides that no injunction shall operate until the party obtaining the same shall give an undertaking, has no application to suits brought by or on behalf of the state in the exercise of its sovereignty.

5. —————— *Same.* Injunction being an equitable remedy, ·it is within the power of the court to provide that it shall not issue until the party applying for the same shall give an undertaking to indemnify the defendant from loss or damage occasioned thereby, and this power extends to cases brought by or on behalf of the state.

6. —————— *Same.* Where a temporary injunction is granted by the district court in a suit brought by the state on the relation of the attorney-general, which is afterward dissolved, and on the application of the state the supreme court grants an order continuing the injunction in force pending proceedings in error, on the condition that the plaintiff shall furnish a bond to secure to the party injured all damages sustained if it be finally decided that the injunction ought not to have been granted, *held*, that a bond executed under such circum-

stances is a valid and binding obligation, and an action can be maintained thereon.

Error from Clay district court; SAM KIMBLE, judge. Opinion filed February 6, 1909. Reversed.

*F. B. Dawes, C. P. Rutherford,* and *R. C. Miller,* for plaintiff in error.

*Chiles C. Coleman,* and *Frank L. Williams,* for defendants in error.

The opinion of the court was delivered by

PORTER, J.: This action was brought to recover damages on an injunction bond. On the 27th day of August, 1906, the state, on the relation of C. C. Coleman, attorney-general, brought an action in the district court against the city of Clay Center to restrain the city from issuing and disposing of certain bonds which were about to be issued and sold for the purpose of building and equipping an electric lighting plant. A temporary injunction was granted by the judge of the district court. A trial was had and judgment rendered in favor of the city dissolving the temporary injunction. On the application of the state the order dissolving the temporary injunction was stayed and the cause was brought to this court on proceedings in error, where the judgment of the district court was affirmed. (*The State v. Clay Center,* 76 Kan. 366, 91 Pac. 91.) The bond sued on was given in pursuance of an order of this court for the purpose of keeping in force the temporary injunction pending the decision here. The district court allowed a motion of the defendants to strike from the plaintiff's petition certain paragraphs with respect to damages claimed, and it is to review the rulings of the district court in this respect that these proceedings are brought.

The first paragraph stricken from the petition alleged that during the pendency of the injunction the

price of machinery and building material necessary for the erection of the lighting plant advanced in the market as much as twenty per cent. in value, and that the difference in the price at which the city could have purchased such machinery and building material at the time the bond was given and the market price when the injunction was finally dissolved amounted to the sum of $2500.

The second paragraph alleged that on the date the injunction was granted the bonds of the city were worth par in the market, and could readily have been sold at their face value; that because of a depression in the money market the value of the bonds had depreciated at the time of the dissolution of the injunction at least ten per cent., and could not then and can not now be sold for more than ninety cents on the dollar, to the damage of the plaintiff in the sum of $2500.

The first claim of damages is based upon an increase in the cost of machinery and building material during the pendency of the injunction. The bond only indemnified the city against loss or damage occasioned by the injunction. Unless the injunction was the direct and proximate cause of the damage there is no liability on the bond. The rule is stated in volume 2 of the third edition of High on Injunctions, section 1663, as follows:

"That nothing will be allowed which is not the actual, natural and proximate result of the wrong committed. . . . Speculative and remote damages are not properly allowable, nor are those which are merely consequential, the limit being such damages as flow directly from the injunction as its immediate consequence."

The city was enjoined from issuing and selling certain bonds. It was not enjoined from doing anything else. There was nothing in the injunction to restrain the city from erecting a lighting plant or from purchasing machinery and material. Unless it was prevented

from making these purchases by reason of the injunction it can not set up a claim that the increased price it might afterward pay would be the direct result of the injunction. It is obvious, therefore, that this claim is too remote, and was properly stricken from the petition.

It is equally obvious that for the reasons just stated the trial court erred in striking from the petition the claim of damages based upon the depreciation in the market value of the specific bonds which the injunction prevented the city from selling. In the same section of High on Injunctions from which we have just quoted (§ 1663) it is said:

"But where an injunction operates to delay the sale of property, real and personal, and pending such delay great depreciation occurs in the value of the property, such loss, being regarded as occasioned by the injunction, may be properly included in estimating the damages incurred."

The city was enjoined from issuing and selling these bonds. During the pendency of the injunction their market value depreciated $2500. When a city places its bonds on the market it must dispose of them at the market price. But for the injunction it would have received a certain sum for these particular bonds. The difference, therefore, between the market value of the bonds when the injunction stopped the sale and their market value when the injunction no longer prevented a sale is the measure of one of its claims for damages, because it measures a loss which is the direct and proximate result of the injunction.

The defendants have directly raised another question, which has never been passed upon by this court and which it is insisted goes to the merits of the whole controversy. It is urged that section 242 of the code of civil procedure, which reads that "no injunction, unless otherwise provided by special statute, shall operate until the party obtaining the same shall give an

undertaking," has no application to actions brought by or on the relation of the state.

When the state seeks to enjoin a corporate act of one of its subsidiary governmental agencies on the ground that the act contemplated constitutes a breach of trust, or is *ultra vires,* or an abuse of power, the state is in the exercise of ·its sovereignty.  Under the common law as it prevailed in England certain exclusive rights and powers belonged to the government, represented by the king, and were known as the king's prerogatives.  Under our system of government the state is the successor to the king, and the right to exercise these prerogatives inheres in the state.  The power of· the state to invoke what were always known as the prerogative .writs is limited only by the constitution. The state may proceed by mandamus or *quo warranto* in this court, because the constitution gives to the supreme court original jurisdiction in such cases.  When the state resorts to injunction it must proceed in a lower court, for the reason that this court has no original jurisdiction in injunction.  In the suit in which the bond in question was given the state proceeded on its own motion at the instance of its highest law officer. In the case of *Attorney-general v. Detroit,* 26 Mich. .263, Mr. Justice Cooley said:

"The right of the attorney-general to proceed in equity to enjoin an abuse of corporate power, consisting in the appropriation of corporate funds in a manner not justified by law, appears to me to rest in sound principle.  .  .  .  Every misuse of corporate authority is in a legal sense· an abuse of trust; and the state, as the visitor· and supervisory authority and creator of the trust, is exercising no impertinent vigilance when it inquires into and seeks to check it." (Pages 264, 266.)

And in *The State v. Kansas City,* 60 Kan. 518, 57 Pac. 118, this court said:

"The prevention of like breaches of trust by the officers of municipal corporations is also the duty of

the attorney-general of the state, or other public counselors." (Page 525.)

The state has the sovereign power of visitation to inquire into the conduct of private corporations which it has authorized to be created, and in all actions brought by it against either public or private corporations or against public officials to prevent the abuse of power the action is *publici juris,* and the state merely exercises one of its prerogative rights of sovereignty.

The provision of the code to the effect that no injunction shall operate until the party obtaining the same shall give an undertaking should not be construed to limit the sovereign power of the state, unless such an intention is expressly declared or appears by necessary implication. The statute itself makes no reference to actions brought by the state. The rule of interpretation that the language of the statute shall be limited to such persons or subjects as it is reasonable to presume the legislature intended it should apply was declared in *The State v. Smiley,* 65 Kan. 240, 69 Pac. 199, 67 L. R. A. 903, and followed in *The State v. Book Co.,* 69 Kan. 1, 76 Pac. 411, 1 L. R. A., n. s., 1041. In the opinion in the latter case Mr. Justice Burch quotes from page 460 of volume 1 of the fourteenth edition of Kent's Commentaries, as follows:

"It is likewise a general rule, in the interpretation of statutes limiting rights and interests, not to construe them to embrace the sovereign power or government, unless the same be expressly named therein, or intended by necessary implication."

(To the same effect is *Jackson County v. Kaul,* 77 Kan. 715, 717, 96 Pac. 45.)

It would require a most unreasonable construction of section 242 of the code to presume an intention on the part of the legislature to place a limitation on the

exercise by the state of its sovereign power. It is doubtless within the power of the legislature to provide that even the state shall not have the benefit of an injunction without furnishing bond; but the requirement is a limitation on one of the highest prerogatives of sovereignty, and must be expressly declared or follow by necessary implication.

Injunction, however, is an equitable remedy. When an application is presented the court acts in the capacity of a chancellor; and, whether the application is made by a private party or on behalf of the state, the principles of equity control. It is within the power of the chancellor to grant or refuse the injunction, or to grant it upon terms; and, notwithstanding the fact that the plaintiff in the action is the state, it is within the power of the chancellor to grant the injunction upon the condition that the state shall give a bond to indemnify the defendant from loss, and to refuse to grant the relief unless a bond is given, if in his opinion equity requires a bond.

The bond sued on in this case was not given under the provisions of section 242 or of any other provision of the code. It was given pursuant to an order of this court, and the injunction was only continued in force upon condition that the bond should be furnished by the plaintiff, because, in the opinion of the court, the circumstances were such as seemed to require that a bond be given. While we concur, therefore, in the contention of the defendants that this provision of the code does not apply to the state, we go further and hold that the bond in question was given in pursuance of an express order of this court, as a condition precedent to the continuance in force of the injunction, and that it was therefore a valid obligation.

It is insisted by the plaintiff that in previous decisions by the court it has been held that this provision of the code relating to injunction bonds applies to the state the same as to individuals. The cases relied upon

are *The State, ex rel., v. Eggleston,* 34 Kan. 714, 10 Pac. 3; *The State, ex rel., v. Comm'rs of Rush Co.,* 35 Kan. 150, 10 Pac. 535, and *The State, ex rel., v. Comm'rs of Kearny Co.,* 42 Kan. 739, 22 Pac. 735. There are some expressions in these opinions which would seem to uphold the contention of the plaintiff, but upon examination the cases are readily distinguished, for two reasons: first, the precise question which we are now considering was not presented nor passed upon, by the court; second, in all three of the cases the trial court required the giving of an injunction bond. In the last two cases cited the injunction was issued, but the order of the court requiring a bond was disregarded. The question whether section 242 of the code applies to actions brought by the state was not suggested. There was a failure to comply with the express order of the court requiring a bond in both cases, and the injunctions were properly held void. In *The State, ex rel., v. Eggleston, supra,* it was contended that the injunction was void because the state can not give a bond, and if it could it would not be suable upon it. The only point decided with respect to such a bond is that where a temporary injunction is allowed in a suit brought in the name of the state an undertaking furnished by the state but signed only by sureties is valid and binding. And that is what we decide in this case.

It follows from what has been said that the judgment must be reversed for the error of the court in striking from the petition the paragraph setting up the claim of damages occasioned by the depreciation in the value of the bonds during the pendency of the injunction. The judgment is therefore reversed, with directions to proceed in accordance with, the views herein expressed.