**NEWSPAPER & PERIODICAL DRIVERS' & HELPERS' UNION, LOCAL 921, Plaintiff–Appellee,**

v.

**SAN FRANCISCO NEWSPAPER AGENCY, Defendant–Appellant.**

No. 95–15512.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1996.

Decided July 15, 1996.

---

Leslie E. Lewis, King & Ballow, San Diego, California, and David Byrnes, Littler, Mendelson, Fastiff, Tichy & Mathiason, San Francisco, California, for defendant-appellant.

Andrew H. Baker, Beeson, Tayer & Bodine, San Francisco, California, for plaintiff-appellee.

Before: T.G. NELSON and TASHIMA, Circuit Judges, and BURNS,* District Judge.

T.G. NELSON, Circuit Judge:

## OVERVIEW

The San Francisco Newspaper Agency ("Agency") appeals the district court's order denying execution of a surety bond in the action by the Newspapers & Periodical Drivers' Union, Local 921 ("Union") seeking to enjoin the Agency from restructuring its newspaper delivery system pending arbitration. The Agency prevailed in the arbitration, the injunction was dissolved, and the Agency seeks to recover the bond posted by the Union.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL HISTORY

The Union represents district managers employed by the Agency. District managers deliver the San Francisco Chronicle and Examiner to youth carriers or adult carriers, who then deliver the papers to residential subscribers. The youth and adult carriers are independent contractors and are not represented by the Union.

In an effort to consolidate its delivery routes, the Agency notified the Union of its intent to eliminate a significant number of the youth carrier positions and replace them

---

* Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation.

with adult carriers. The Agency's rationale for this move was that the adult carriers deliver by car, and therefore each adult carrier can do the work of multiple youth carriers. This plan, however, resulted in the reduction of the number of district managers needed by the Agency.

The Union filed a complaint alleging that the Agency's planned action would result in the layoff of district managers which would violate the parties' collective bargaining agreement. The district court issued a Temporary Restraining Order ("TRO") on August 31, 1993, and ordered the Union to post a bond pursuant to Rule 65(c) in the amount of $20,000. After briefing and a hearing on the preliminary injunction, the court granted the Union's application for a preliminary injunction on November 2, 1993. On December 14, 1993, upon motion by the Agency, the bond was increased to $65,000.

While the civil suit was pending in district court, the parties proceeded directly to arbitration in order to expedite resolution of the Union's pending grievance. On March 24, 1994, the Arbitrator issued a decision in favor of the Agency. The Arbitrator concluded that Section 1(c) of the Collective Bargaining Agreement ("CBA") permits the Agency to "bank" district manager attritions during the life of the 1990–93 agreement to be used against district manager positions eliminated exclusively due to the expanded use of adult carriers during the same time.

The Agency applied to the district court to have the injunction dissolved. The district court denied the Agency's motion, but increased the bond to $80,000. The Agency appealed the denial. The court raised the bond to $180,000. The Agency's appeal was voluntarily withdrawn when the district court dissolved the injunction pursuant to a final award in favor of the Agency by the Arbitrator.

On November 21, 1994, based on the Arbitrator's final decision, the Agency filed a motion to execute the bond the Union had posted in this matter. The district court denied the Agency's motion on February 1, 1995. The district court held that

the granting of a status quo injunction is not linked to the merits of the underlying arbitration; rather, it turns on whether the injunction is necessary to preserve the arbitral process.... Thus, a party may be properly enjoined even though it wins the arbitration, if the injunction was necessary to protect the arbitral process.

## ANALYSIS

■ The standard of review for an order denying a motion to execute a bond is *de novo*. *Nintendo of America v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 85, 130 L.Ed.2d 37 (1994).

■ The Agency, citing *Nintendo*, contends that it has been wrongfully enjoined in this case because it prevailed in the underlying arbitration, and therefore the bond should be executed in its favor. In *Nintendo*, Nintendo obtained a preliminary injunction against Lewis Galoob Toys to prevent Lewis Galoob from selling its product pending litigation in Nintendo's copyright infringement action against Lewis Galoob. Lewis Galoob prevailed on the merits in the copyright infringement litigation. The district court vacated the injunction.

The issue on appeal was whether Lewis Galoob was entitled to execute the bond. In *Nintendo*, we held that "there is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond." 16 F.3d at 1036. The expressed policy reason behind this rule is twofold: (1) to discourage parties from requesting injunctions based on tenuous legal grounds; and (2) to assure judges that defendants will be compensated for their damages if it later emerges that the defendant was wrongfully enjoined. *Id.* at 1037.

In this case, the Union was required to post the bond under Rule 65(c) of the Federal Rules of Civil Procedure to maintain an injunction against the Agency. Because the Arbitrator ultimately ruled in favor of the Agency, the Agency argues that it was wrongfully enjoined, and therefore the district court erred in refusing to execute the

bond against the Union under the *Nintendo* standard.

On the other hand, the Union argues that the injunction issued in this case was not a typical interlocutory injunction because in a typical case, the court grants an interlocutory injunction and then, after receiving more evidence on the matter, deliberates on the merits of the dispute further before issuing a final judgment. The Union asserts that the injunction in this case is unique to the collective bargaining context, because the purpose of the injunction is to preserve the status quo pending arbitration. Thus, citing *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Union contends that when a district court issues an injunction ordering an employer to preserve the status quo pending arbitration, the court is merely holding the employer to its promise to preserve the status quo until a final arbitration decision is issued.

In *Boys Markets*, the Retail Clerks Union went on strike during the term of its collective bargaining agreement to pressure the employer over a work-assignment dispute. The employer sought an order enjoining the strike and ordering the union to submit the dispute to arbitration. In opposition to the injunction, the union cited the anti-injunction provisions of the Norris–LaGuardia Act, 29 U.S.C. §§ 101, *et seq.* In affirming the injunction against the union, the Supreme Court created an exception to the Norris–LaGuardia Act for circumstances where a union strikes over a dispute that both parties are contractually bound to arbitrate. *Id.* at 254, 90 S.Ct. at 1594. In *Boys Markets*, the Court held that injunctive relief is available when: (1) the collective bargaining agreement contains a mandatory arbitration provision; (2) the underlying dispute is arbitrable; (3) the party seeking arbitration is prepared to arbitrate; and (4) issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether the breaches have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance. *Id.*

Since the decision in *Boys Markets*, there have been cases where reverse situations have arisen. In a "reverse *Boys Markets*" case, an employer makes changes in areas which are subject to the grievance-arbitration procedure, and the union seeks to enjoin the employer from making the changes until the grievance is resolved through arbitration.

Citing *Amalgamated Transit Union v. Greyhound Lines, Inc.*, 529 F.2d 1073 (9th Cir.) (*"Greyhound I"*), *vacated* and *remanded*, 429 U.S. 807, 97 S.Ct. 43, 50 L.Ed.2d 68 (1976), *reversed on remand*, 550 F.2d 1237 (9th Cir.) (*"Greyhound II"*), *cert. denied*, 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 99 (1977), the Union argues that prevailing in the underlying arbitration is irrelevant to the recovery of a bond in a reverse *Boys Markets* case. In *Greyhound I*, the employer, Greyhound, attempted to implement changes in the work cycles of bus drivers. The union objected, arguing that Greyhound could not, under the terms of the collective bargaining agreement, unilaterally make such changes. Consequently, the union sought an injunction to prevent Greyhound from implementing the changes pending resolution of the matter through arbitration. In opposition to the request for injunction, Greyhound argued that under the ordinary principles of equity, as required by *Boys Markets*, the union was required to "establish that there is a 'reasonable likelihood of success' in having its position in the arbitration proceedings accepted by the arbitrator." *Id.* at 1077. The district court granted the injunction against Greyhound.

On appeal, we affirmed the injunction, holding that "a plaintiff ... seeking to maintain the status quo pending arbitration pursuant to the principles of *Boys Markets* need only establish that the position he will espouse in arbitration is sufficiently sound to prevent the arbitration from being a futile endeavor." *Id.* at 1077–78. In rejecting Greyhound's contention that the bond should have been conditioned to call for payment on the arbitrator's decision in favor of Greyhound on the merits, we held:

We agree with the court in *United States Steel Corporation v. United Mine Workers of America,* [456 F.2d 483, 488 (3d Cir. 1972)] when it held that the bond in a *Boys Markets* proceeding was payable "only if the preliminary injunction is found to have been improvidently or erroneously issued, that is, where the court did not hold a proper hearing or failed to make the factual determinations mandated by Part V of the *Boys Markets* opinion or where the court erroneously issued a preliminary injunction over a labor dispute not covered by the contract grievance-arbitration provision."

*Id.* at 1079.

On certiorari, the Supreme Court vacated and remanded for reconsideration in light of *Buffalo Forge Co. v. United Steelworkers of America, AFL–CIO,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976).[1] On remand, in *Greyhound II,* we reversed our decision in *Greyhound I,* holding that the injunction was improperly issued where it was clear that "the arbitration of the dispute [would] be unaffected by Greyhound's alteration of the status quo," and where there was "neither an express nor implied in fact promise by Greyhound to preserve the status quo." 550 F.2d at 1239.

Notwithstanding the reversal of *Greyhound I,* other circuits have cited and approved of the analysis in *Greyhound I* regarding the issue of when a party is wrongfully enjoined in a reverse *Boys Markets* context. In *Lever Brothers Co. v. International Chemical Workers Union,* 554 F.2d 115 (4th Cir.1976), the district court granted the union's motion to enjoin the employer from relocating its business in order to preserve the status quo pending the outcome of the arbitration construing the terms of the labor contract. The matter was arbitrated and an award was rendered in favor of the employer. The employer appealed, seeking a determination that the preliminary injunction was wrongfully issued and that the injunction should have been conditioned on the outcome of the ar-

bitration. The Fourth Circuit, citing the rationale from *Greyhound I,* affirmed the district court's issuance of the preliminary injunction preserving the status quo until the completion of the pending arbitration. *Id.* at 120.

With regard to the issue of the conditions of the bond, the *Lever Brothers* court held that the "District Court correctly conditioned the injunction bond upon the possible wrongful issuance of the preliminary injunction, and not upon the outcome of the merits of the arbitration." *Id.* The court further stated:

Rule 65(c) of the Federal Rules of Civil Procedure does not stand as authority that injunction bonds in labor cases are to be conditioned on the outcome of the merits of arbitration.... We are in agreement with the Third and Ninth Circuits that an injunction bond posted in a *Boys Markets* case is payable only if the preliminary injunction is found to have been wrongfully issued, where, for example, the court erroneously issues a preliminary injunction over a labor dispute not covered by the grievance-arbitration provisions of the contract.

*Id.* at 120–21.

Additionally, in *Local 610 v. Kroger Co.,* 858 F.2d 415 (8th Cir.1988), the union filed a bond in support of a temporary restraining order ("TRO") against the employer to prevent the closing of operations pending the outcome of the grievance procedures. Upon a ruling by the grievance committee in favor of the employer, the TRO was dissolved. The union sought to rescind the bond; however, the district court awarded damages to the employer in the amount of the bond. On appeal, the Eighth Circuit, citing *Greyhound I* and *Lever Brothers,* determined that the union's position was "sufficiently sound to prevent the grievance proceedings from being a futile endeavor," and that "the district court correctly determined the closings would undermine the grievance proceedings." *Id.* at 416 (quotations omitted). The Eighth Circuit thus concluded that the "Union's loss

---

1. In *Buffalo Forge,* the Supreme Court held that a sympathy strike in the face of a no-strike clause in the labor contract and the arbitrability of the question of whether the sympathy strike violates the no-strike clause did not warrant an injunction.

on the merits of the grieved dispute [was] irrelevant to the correctness of the initial TRO decision." *Id.*

■ Therefore, under *Greyhound I, Lever Brothers,* and *Kroger,* the district court is correct in that where a reverse *Boys Markets* situation exists, the fact that the employer prevails in arbitration does not automatically require the bond to be executed. Also, this distinction for reverse *Boys Markets* situations can be reconciled with the holdings in *Nintendo* and *Greyhound II.*

In *Nintendo* the standard was that "there is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond." 16 F.3d at 1036. However, we went on to explain that "this standard provides an equitable means by which courts can decline to impose damages on the rare party who has lost a case on the merits but nevertheless should not suffer the execution of the preliminary injunction bond." *Id.* at 1037.

The decision in *Greyhound II* hinged on our determination that Greyhound was wrongfully enjoined because there was no expressed or implied-in-fact promise by Greyhound to maintain the status quo. We further held that the integrity of the arbitration process would not have been compromised by Greyhound's alteration of the status quo. 550 F.2d at 1239.

Thus, even under *Nintendo* and *Greyhound II,* the outcome of the arbitration process does not, in and of itself, prove that the reverse ·*Boys Markets* injunction was wrongful. However, this does not end the inquiry in this case. While the outcome of the arbitration is not determinative, as the Agency argues, neither is it irrelevant, as the Union contends. The Agency is entitled to execute the bond if the Agency was wrongfully enjoined.

Under *Boys Markets,* in order to determine if the district court "wrongfully enjoined" the Agency, this court reviews the following considerations: (1) whether the collective bargaining agreement contains a mandatory arbitration provision; (2) whether the underlying dispute is arbitrable; (3)

whether the party seeking arbitration is prepared to arbitrate; and (4) whether the issuance of an injunction would be warranted under ordinary principles of equity. The fourth consideration turns on whether breaches are occurring and will continue, or have been threatened and will be committed; whether the breaches have caused or will cause irreparable injury to the Union; and whether the Union will suffer more from the denial of an injunction than will the Agency from its issuance.

■ We review the district court's issuance of an injunction for abuse of discretion. *Greyhound I,* 529 F.2d at 1078. Within this context, questions of law are reviewed *de novo,* and the district court's findings of fact are reviewed for clear error. *Niagara Hooker Employees Union v. Occidental Chemical Corp.* 935 F.2d 1370, 1374 (2d Cir.1991).

In *Niagara Hooker,* the Second Circuit stated that "it is unnecessary to imply an employer's duty to preserve the status quo from the existence of a promise to arbitrate." 935 F.2d at 1377. In *Greyhound II,* we stated, "[A] strike pending arbitration generally will frustrate and interfere with the arbitral process while the employer's altering the status quo generally will not." 550 F.2d at 1238–39.

> The arbitration process is rendered meaningless only if any arbitral award in favor of the union would substantially fail to undo the harm occasioned by the lack of a status quo injunction.... The arbitral process is not rendered "meaningless," however, by the inability of an arbitrator to completely restore the status quo ante or by the existence of some interim damage that is irremediable.

*Niagara Hooker,* 935 F.2d at 1378. The " 'frustration of arbitration' standard preserves the effectiveness of the arbitral process which the parties have agreed upon. By requiring more than a minimal showing of injury for the issuance of an injunction, the standard also guards against undue judicial interference with the employer's ability to make business decisions." *Id.*

Based on the evidence presented by the parties regarding the feasibility of re-creat-

ing the dismantled youth carrier system, the district court found that such re-creation was extremely impracticable. Re-creating the existing structure need not have been impossible, as in *Lever Brothers* where the employer proposed to relocate its operations to a different state. Here, it would have been difficult for the Agency to re-create the youth carrier system, but not impossible. However, the Union would have suffered more from the loss of the district manager positions and the difficulty of reestablishing them following a favorable arbitration decision than the Agency would have suffered in maintaining the existing system for the same period. Consequently, the district court concluded that maintenance of the status quo was essential to preserving the Union's arbitral remedy. We cannot say that the district court abused its discretion in doing so.

### CONCLUSION

For the reasons stated above, the district court's order denying the motion to execute the bond is affirmed.

AFFIRMED.