**SIONIX CORPORATION, a Utah Corporation, Plaintiff,**

v.

**Jack MOOREHEAD, an individual; Dascore, LLC; S. Donna Friedman, an individual; the Friedman Family Trust; S.D. Friedman Trust; Laura Friedman, an individual, Cheryl Friedman, an individual; Jack Moorehead d.b.a. Act; Wade Cowart, an individual, and Does 1–100, Inclusive, Defendants.**

**And Related Counterclaims**

**No. CIV. 99CV1201–L(NLS), 525.**

United States District Court, S.D. California.

Dec. 3, 2003.

See also 56 Fed.Appx. 314.

Steele N. Gillaspey, Laturno Graves & Gillaspey, San Diego, CA, for Plaintiff.

Donald G. Rez, Sullivan Hill Lewis Rez & Engel, San Diego, CA, for Defendant Wade Cowart.

## ORDER GRANTING WADE CO-WART'S MOTION TO EXECUTE ON THE INJUNCTION BOND

LORENZ, District Judge.

This matter comes before the Court on Wade Cowart's motion to execute against bond. The Court finds this motion suitable for determination on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1).

### BACKGROUND

Jack Moorehead is the inventor and co-inventor of water purification technology. Moorehead formed a company called Automatic Control Technologies, Inc. ("ACT"). In 1994, Automatic Control Corporation ("ACC") purchased the assets and assumed selected liabilities of ACT. ACC then did a reverse merger with Coronado

Capital Corporation ("CCC"), a publicly traded shell. The merged company became Plaintiff Sionix. Sionix is involved in the research, development, and creation of water reclamation technologies for commercial use.

Moorehead transferred seven patents relating to water purification technology to the corporations he formed. Sionix currently owns these seven patents. Moorehead, S. Donna Friedman, and Laura and Cheryl Friedman are former Sionix officers and directors and Sionix shareholders. Beginning in 1998 and up to March, 1999, Wade Cowart purchased Sionix shares directly from the corporation and from S. Donna Friedman. Moorehead, S. Donna Friedman, and Laura and Cheryl Friedman left Sionix in March 1998 when James Houtz took over as Sionix's CEO, and new board members took over Sionix's operations.

### PROCEDURAL BACKGROUND

On June 10, 1999, Sionix commenced this action alleging the Defendants were infringing Sionix's patents and engaging in unfair competition as well as other tortious acts. On January 24, 2000, this Court heard Sionix's *ex parte* application for a temporary restraining order to restrain the individual Defendants, Cowart,[1] and Holly Badger[2] from selling their Sionix stock. At the hearing, the parties agreed to a mutual temporary restraining order, whereby Defendants and Sionix's board of directors would not sell or otherwise encumber any of the shares of Sionix they held. The Court denied the temporary restraining order as to Cowart and Badger.

On February 11, 2000, this Court heard oral argument on the order to show cause regarding issuance of a preliminary injunction. By order dated February 18, 2000, this Court entered a preliminary injunction enjoining all Defendants, Cowart, and Holly Badger, their officers, agents, servants, employees, assigns, attorneys, and persons or entities in active concert or participation with them from transferring, selling, encumbering, or in any manner releasing any interest in any share of Sionix in their possession and/or control. (Feb. 18, 2000, Order at 14.) Plaintiff was ordered to submit a properly conditioned security bond or cash equivalent in the amount of $100,000 pursuant to Federal Rule of Civil Procedure 65(c). *Id.* On March 3, 2000, Sionix submitted the bond.

On May 17, 2000, this Court heard Defendants' *ex parte* application to increase the amount of the injunction bond. Based upon the parties' agreement, by order dated June 6, 2000, the Court amended the preliminary injunction order to allow Wade Cowart to sell 332,500 shares of free-trading Sionix stock that were not derived from S. Donna Friedman. (June 6, 2000, Order at 2, 4.) The Court further found that an increase in the amount of the injunction bond was not warranted. *Id.* at 2–4. But the Court did find that allowing Defendants to sell periodically a portion of their shares was warranted to protect Defendants' interest in taking advantage of the rise and fall of Sionix's stock price. *Id.* at 4. Accordingly, the Court modified the preliminary injunction order to allow the Defendants to collectively sell 250,000 shares per 90–day period. *Id.* Defendants were required to place the proceeds of the sales in a trust account and the proceeds could only be released upon court order or stipulation of the parties. *Id.* at 4–5.

---

**1.** Cowart was not a Defendant in this action at that time, and owned 1,432,500 shares of Sionix stock.

**2.** Holly Badger was Moorehead's secretary.

On May 1, 2000, Cowart filed a motion for relief from this Court's order granting Plaintiff's motion for a preliminary injunction. In light of the Court's June 6, 2000, order modifying the preliminary injunction, the only shares at issue with respect to Cowart's motion were the shares he bought from S. Donna Friedman. At the June 16, 2000, hearing, the Court found that Cowart had not submitted sufficient evidence to show he was a *bona fide* purchaser. The Court ordered the parties to provide supplemental briefing. Cowart subsequently submitted additional evidence, including stock certificates, showing he owned 1,050,000 shares of the Sionix stock that was in dispute in the motion. In an order dated September 18, 2000, the Court found Cowart established he was a protected purchaser under California Commercial Code section 8303 as to the 1,050,000 shares of Sionix stock he purchased from S. Donna Friedman between June 17, 1998 and November 24, 1998. (Sept. 18, 2000, order at 8–17.) Because there were no longer any serious questions as to Cowart's ownership of those shares, the Court granted Cowart relief from the preliminary injunction as to those 1,050,000 shares of Sionix stock. *Id.* at 17, 31. Cowart remained enjoined from selling the 50,000 shares of Sionix stock he purchased from S. Donna Friedman on March 24, 1999, and for which Sionix had not issued Cowart a certificate. *Id.* at 31. The Court found that Cowart had not established he was a protected purchaser of those shares, and that there were still "serious questions" as to whether S. Donna Friedman had properly obtained those shares.

Cowart subsequently moved to execute on the injunction bond. At a hearing on the motion on June 18, 2001, and by order dated June 22, 2001, this Court denied Cowart's motion without prejudice, noting there were other potential claimants to the bond funds. (June 22, 2001, Order; June 18, 2001, Tr. at 26.) The Court also found that the amount of Cowart's damages was somewhat speculative because had Cowart sold all of the stock he wanted to sell, he may have depressed the market. (June 18, 2001, Tr. at 25.)

On November 20, 2001, the Court approved a joint request for dismissal of various Defendants, including Cowart, and all their claims "with the exception of the claims and defenses regarding the $100,000 security or bond posted by Sionix in connection with the preliminary injunction." On December 7, 2001, the Court issued an order stating, "all of the parties that were subject to the preliminary injunction order have been dismissed. Good cause appearing, the Court's preliminary injunction order is **DISSOLVED** and the security posted by Sionix is **RELEASED.**"

On January 4, 2002, within the sixty days permitted under the settlement agreement, Cowart filed a motion to execute on the bond. A hearing on the motion was set for February 25, 2002. However, several other Defendants appealed from a settlement compliance order of the Court and could no longer be discounted from the possibility of having a claim on the bond. Therefore, the Court approved a stipulation by the parties to take Cowart's motion to execute "off calendar without prejudice to the hearing being reset following the conclusion of the appeals [by other defendants]." (Feb. 15, 2002, Stipulation & Order) The Court also approved the parties' stipulation to narrow discovery to that which was relevant to the bond motion. *Id.*

Cowart subsequently filed a motion to require Plaintiff to re-submit the security. By order dated August 5, 2002, this Court granted Cowart's motion, finding its De-

cember 7, 2001, order premature and inadvertent. (Aug. 5, 2002, Order.)

After the Ninth Circuit affirmed the Court's order that had been appealed, Cowart filed the instant motion seeking to execute on the $100,000 bond.

## DISCUSSION

### I. Applicable Law

█ Federal Rule of Civil Procedure 65(c) requires the posting of security by an applicant for an injunction to make funds available "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). Before an enjoined party can recover on a bond, it must establish that it was wrongfully enjoined, and that it suffered injury as a result of the injunction. *Matek v. Murat*, 862 F.2d 720, 733 (9th Cir.1988), *abrogated on other grounds, Holden v. Hagopian*, 978 F.2d 1115 (9th Cir.1992). A party is wrongfully enjoined when it had the right all along to do what it was enjoined from doing. *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994). A finding that a party was wrongfully enjoined does not imply the court erred in issuing the injunction. *Id.* at 1036 n. 4.

█ In the Ninth Circuit, " 'there is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of bond.' " *Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency*, 89 F.3d 629, 631 (9th Cir.1996) (*quoting Nintendo*, 16 F.3d at 1036). The purpose of this policy is "(1) to discourage parties from requesting injunctions based on tenuous legal grounds; and (2) to assure judges that defendants will be compensat-

ed for their damages if it later emerges that the defendant was wrongfully enjoined." *Id.* This standard "provides an equitable means by which courts can decline to impose damages on the rare party who has lost a case on the merits but nevertheless should not suffer the execution of the preliminary injunction bond." *Nintendo*, 16 F.3d at 1037; *Newspaper & Periodical Drivers'*, 89 F.3d at 634. Damages on an injunction bond are limited to those actually and proximately resulting from the effect of the injunction itself, as opposed to litigation expenses independent of the injunction. *Matek*, 862 F.2d at 733.

█ Courts have discretion to deny recovery on the injunction bond even though the injunction was wrongful. 3 William W. Schwarzer *et al., California Practice Guide: Federal Civil Procedure Before Trial*, § 13:204 at 13–84 (The Rutter Group 2003). However, the court must have a good reason from departing from Rule 65's preference in favor of recovery. *Coyne–Delany Co. v. Capital Dev. Bd. of the State of Illinois*, 717 F.2d 385, 392 (7th Cir.1983). In exercising this discretion, a defendant's failure to mitigate damages is a good reason for denying such recovery. *Id.*

### II. Whether Cowart Should Recover from the Bond

Cowart contends that he was wrongfully enjoined and restrained from selling 1,382,000 shares of Sionix stock between February 18, 2000 and September 18, 2000, and that but for the injunction, he would have sold his stock in March and April 2000 when the stock was trading between $2 and $3 per share. (Cowart (01/04/02) Decl. ¶¶ 2, 5.) Cowart states he wished to sell his stock at that time because Sionix was trading at historically high levels. *Id.* ¶ 3. In addition, Cowart felt that the March 2, 2000, annual share-

holders meeting made it clear Sionix management intended to pursue a management strategy he believed would be detrimental to the company; in particular, continuing this lawsuit against Dascore, as well as adding Cowart as a Defendant to this case. *Id.* Based on those circumstances, Cowart did not wish to be affiliated with Sionix or have money invested in Sionix stock. *Id.* ¶ 4. He claims his losses exceed the amount of the bond and therefore he is entitled to the entire bond.

Plaintiff does not dispute that Cowart was wrongfully enjoined as defined by the Ninth Circuit. Accordingly, Cowart is entitled to the rebuttable presumption permitting him to recover from the injunction bond in the amount of provable damages. *See Newspaper & Periodical Drivers'*, 89 F.3d at 631; *Nintendo*, 16 F.3d at 1036. Plaintiff's opposition to this motion is that this Court should exercise its discretion to deny Cowart recovery from the bond because he failed to mitigate his damages. Plaintiff further argues that Cowart's damages are speculative, and that his inequitable conduct also bars him from executing

on the bond. The Court will address each argument in turn.

## A. Whether Cowart Failed to Mitigate

█ In *Coyne–Delany*, the Seventh Circuit held that a proper basis for refusing to award damages from an injunction bond is where the defendant failed to mitigate damages. *Coyne–Delany*, 717 F.2d at 392. Plaintiff contends that Cowart did not seek relief from the injunction until two and a half months after the injunction issued, and even then did not request this Court's expeditious review of the matter. Plaintiff also cites to portions of Cowart's deposition where he acknowledged that he knew about the lawsuit and of Plaintiff's intent to seek an injunction against him before Plaintiff sought that relief in court. Because Cowart chose to do nothing, Plaintiff contends that his failure to mitigate precludes his recovery from the bond.

The law presumes Cowart is entitled to the injunction bond. *Newspaper & Periodical Drivers'*, 89 F.3d at 631, 634; *Nintendo*, 16 F.3d at 1036. This Court's discretion in denying execution is narrow.[3]

---

**3.** Insofar as Plaintiff suggests this Court has broad discretion to deny execution notwithstanding this presumption, that argument is not persuasive. Plaintiff cites *Nintendo*, *Coyne–Delany*, *Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456 (Fed.Cir.1997), and *Newspaper & Periodical Drivers'*. Neither *Nintendo* nor *Newspaper & Periodical Drivers'* suggests courts have broad discretion.

Plaintiffs quote *Coyne–Delany* for the statement that the court has carte blanche to excuse the plaintiff from paying any damages on the bond, such as where the defendant has failed to mitigate. *Coyne–Delany* recognized that failure to mitigate can be a good reason to deny execution. *Coyne–Delany*, 717 F.2d at 392. However, the "carte blanche" phrase comes from a portion of the opinion rejecting authority holding courts have open-ended discretion to deny damages under an injunction bond:

it is one thing to say that the requirement of a bond can in effect be waived when there is a good reason for doing so, . . . and another to say that where a substantial bond is clearly required by the equities of the case the district court nevertheless has carte blanche to excuse the plaintiff from paying any damages on the bond.

*Id.* at 391.

Finally, *Hupp*, a Federal Circuit case, applied the Fifth Circuit's standard in *H & R Block, Inc. v. McCaslin*, 541 F.2d 1098, 1099 (5th Cir.1976), where the court held damages on an injunction bond can be denied unless the plaintiff acted in bad faith in obtaining the preliminary injunction. *Hupp*, 122 F.3d at 1467–68. The Ninth Circuit explicitly rejected that standard in *Nintendo*, stating that "[g]ood faith in the maintenance of litigation is the standard expected of all litigants. That a party lives up to this standard simply means

*See Nintendo,* 16 F.3d at 1037 (stating that it is the "rare party" who should not be required to "suffer the execution of the preliminary injunction bond"). Cowart's delay in seeking relief from the injunction does not rebut the presumption in favor of execution. At the time the injunction issued, Cowart was not a party to this action, and was living in Florida. (*See* Docket No. 117 at 2.) The Court does not find it unreasonable that Cowart's first motion for relief was not filed until May 1, 2000, in light of the fact that he had to obtain counsel, and counsel had to conduct a proper research of Cowart's defenses and right to the stock. *Cf. Coyne–Delany,* 717 F.2d at 392 (finding that requesting a 30-day extension of time to file a brief was not a material or unreasonable delay). Accordingly, Cowart did not fail to mitigate his damages.

### B. Whether Cowart's Damages are Speculative

██ After the Court modified the injunction on June 6, 2000, Cowart sold 176,699 shares of Sionix stock at less than $1 per share on 144,299 of the shares and less than $1.10 on another 20,400 shares. (Cowart (01/04/02) Decl. ¶ 6.) Cowart was able to get $1.25 to $1.4375 on 12,000 shares he sold between June 8 and June 19, 2000. *Id.* Cowart states that his damages on the 164,699 shares sold at less than $1.10 per share, when compared to the March 2000 prices, are over $160,000. *Id.* He also states that if he had been able to sell his stock at an average price of $0.65 a share after the injunction was lifted, his losses based upon a price of $1.25 per share are over $829,000. Cowart maintains that the Historical Prices summary shows that the market could have absorbed those 176,699 shares in March and April 2000 without depressing the stock price. He acknowl-

edges that while it is difficult to calculate the precise measure of his damages, his damages far exceed the bond amount.

Plaintiff responds that Cowart's claims of damages are speculative because they are based upon his self-serving testimony that he would have sold his stock in March and April 2000. According to Plaintiff, Cowart has failed to show his sale of stock would not have depressed the market price for the stock. Plaintiff further questions the veracity of Cowart's claim he intended to sell his stock in March and April 2000, citing Cowart's deposition testimony and declarations filed with this Court.

The Court agrees with Plaintiff that whether Cowart would have sold his stock in the March and April 2000 timeframe and how much he could have sold and at what price is speculative. Indeed, in this Court's June 6, 2000, order denying Defendants' request to increase the injunction bond, the Court noted that:

> Whether the Defendants and Cowart have indeed suffered any damages because they were unable to sell their stock between February 18, 2000 to April, 2000 is somewhat speculative. One can never know for certain whether the Defendants in fact would have sold their stock. Perhaps they would have held on to it to see if it would go higher. Their statements that they would have sold the stock for $2.00 per share or higher cannot be divorced from the hindsight that the price has dropped since its high of around $3.00.

(June 6, 2000, Order at 3–4.) Cowart's statements in support of this motion do not provide any greater certainty on this issue. His claim that as an informed businessman he wanted to sell off his Sionix stock in March and April 2000 because he disagreed with Sionix's business strategy was

the party did what it out to have done." *Nintendo,* 16 F.3d at 1037.

first raised in connection with his first motion to execute on the injunction bond in a declaration file-stamped on January 4, 2001. A declaration Cowart signed on April 26, 2000, in support his motion for relief from the injunction bond does not mention that he wanted to disassociate himself from the company. Rather, the declaration discusses Cowart's relationship to S. Donna Friedman and Jack Moorehead, and asserts that he derives a portion of his income from trading on the stock market. (Cowart (5/1/01) Decl.)

Nevertheless, Cowart had a legal right to dispose of his stock at any time. *See Osage Oil & Ref. Co. v. Chandler*, 287 F. 848, 851 (2d Cir.1923) ("The *jus disponendi* is an incident of the ownership of property.") The injunction interfered with Cowart's right, and the law imports damage; "the one who sues out the injunction must suffer the pecuniary loss resulting therefrom, and not the person whose legal right was invaded." *Id.* at 852. Further, it is possible to make some reasoned calculation of Cowart's damages even though there are open questions as to whether Cowart intended to sell his stock in March and April 2000, how much he could have sold, and for what price.

Courts that have considered how to calculate damages in this situation "have concluded that the measure of damages is the difference between the value of the stock on the date the injunction issued and the value of the stock on the date the injunction is dissolved." *deCastro v. deCastro*, 415 Mass. 787, 616 N.E.2d 52, 58 (1993); *see also Clay Ctr. v. Williamson*, 79 Kan. 485, 100 P. 59, 61 (1909) ("The difference . . . between the market value of the bonds when the injunction stopped the sale and their market value when the injunction no longer prevented a sale is the measure of

one of its claims for damages because it measures a loss which is the direct and proximate result of the injunction.") This rule is persuasive, and necessary so that courts can make a reasoned calculation of damages where an injunction restrains the sale of stock. Otherwise, a plaintiff could easily defend against execution of an injunction bond by pointing out that measuring a wrongfully enjoined defendants' damages from his inability to sell stock requires conjecture as to whether the defendant would have sold stock, how much, and at what price.

Calculation of Cowart's damages for the 1,050,000 shares this Court relieved from the injunction in its September 18, 2000 order compels the conclusion Cowart is entitled to the entire injunction bond amount. On the day this Court enjoined Cowart's shares—February 18, 2000—the average trading price of Sionix stock was $0.895 a share.[4] (Rez (8/18/03) Decl. Exh. 7.) On September 18, 2000, its average trading price was $0.7965.[5] *Id.* Accordingly, the stock depreciated $0.0985 a share. On 1,050,000 shares of stock, the damages amount to $103,425. Therefore, even without considering the 332,500 shares that were released from the injunction on June 6, 2000, Plaintiffs' damages exceed the injunction bond. For this reason, the Court finds that Cowart is entitled to execute on the entire bond.

## C. Whether Cowart's Inequitable Conduct Precludes Recovery

█ Plaintiff contends that it acted in good faith in seeking the injunction, whereas during the litigation, Cowart and his representative Raymond Verheul began issuing negative press releases about Sionix, and threatened they would insti-

---

**4.** The high was $1.03, and the low was $0.76. (Rez (08/18/03) Decl. Exh. 7.)

**5.** The high was $0.843, and the low was $0.75. (Rez (08/18/03) Decl. Exh. 7.)

gate governmental investigations into the company. Cowart's "extortion-like" conduct, according to Plaintiff, mandates his request to execute on the bond be denied. Plaintiff supports this argument with a citation to this Court's statement at the June 18, 2001, hearing that it has the right to weigh the equities of this case.

As an initial matter, Plaintiff's good faith in filing the injunction motion does not rebut the presumption of executing the bond in Cowart's favor. *See Nintendo*, 16 F.3d at 1037 ("Good faith in the maintenance of litigation is the standard expected of all litigants. That a party lives up to this standard simply means the party did what it ought to have done.") As the Seventh Circuit explained, a plaintiff's good faith "would be sufficient only if the presumption were against rather than in favor of awarding costs and damages on the bond to the prevailing party." *Coyne–Delany*, 717 F.2d at 392. Accordingly, Plaintiff's good faith argument is not persuasive.

Ninth Circuit authority supports the proposition that courts have the discretion to do equity when determining whether to allow a wrongfully enjoined party to execute on a bond. *See Newspaper & Periodical Drivers'*, 89 F.3d at 634; *Nintendo*, 16 F.3d at 1037. However, Plaintiffs have not presented any caselaw indicating courts can consider a defendant's conduct wholly unrelated to the issuance of the injunction. If, for example, the defendant sandbagged the plaintiff into prevailing on an injunction even though it knew it could have defeated the injunction, a court may properly decline to award damages. *See Nintendo*, 16 F.3d at 1037–38; *Page Communications Eng'rs, Inc. v. Froehlke*, 475 F.2d 994 (D.C.Cir.1973). But it is quite a different story to decline an award because of the defendant's conduct after the injunction was issued and for matters wholly unrelated to the reason why the defendant was enjoined in the first instance. To do so would ignore the purpose of the injunction bond: to compensate a defendant for damages incurred as a result of being improperly enjoined. Instead, if appropriate, a plaintiff injured by improper conduct that does not touch upon an injunction should seek separate legal relief. Accordingly, Plaintiff's claim of inequitable conduct on Cowart's part does not rebut the presumption in his favor to execute on the bond.

### CONCLUSION

Having reviewed the parties' briefs, the record, applicable law, and good cause appearing, **IT IS HEREBY ORDERED:**

1. Wade Cowart's Motion to Execute Against Bond is **GRANTED** [docket no. 525].

2. The entirety of the $100,000 security posted by Plaintiff shall be forfeited to Wade Cowart.

**IT IS SO ORDERED.**