*13-206-cv*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2013
No. 13-206-cv

U.S. D.I.D. CORP.,
*Plaintiff-Appellant*,

*v.*

WINDSTREAM COMMUNICATIONS, INC.,
*Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of New York.
No. 12-cv-4023 — Jesse M. Furman, *Judge*.

ARGUED: MARCH 31, 2014
DECIDED: DECEMBER 22, 2014

Before: KATZMANN, *Chief Judge*, WALKER and DRONEY, *Circuit Judges*.

Appeal from an order of the United States District Court for the Southern District of New York (Furman, *Judge*) awarding the

defendant damages from security posted by the plaintiff upon the grant of a temporary restraining order under Rule 65(c) of the Federal Rules of Civil Procedure. We hold that the district court retained jurisdiction to award such damages from the security after the plaintiff's notice of voluntary dismissal under Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. Because we conclude that the district court must determine that the defendant was wrongfully restrained before awarding recovery on the security, however, we remand. Finally, we find that, where the district court determines that the defendant was wrongfully restrained by being required to provide services to the plaintiff, it may order recovery from the security in an amount equal to the market value of the services provided.

Accordingly, we **VACATE** and **REMAND**.

_____

JOSEPH K. SCULLY, Day Pitney LLP, Hartford, Connecticut (Nancy Kourland, Rosen & Associates, P.C., New York, New York, *on the brief*), *for Plaintiff-Appellant.*

BRIAN J. BUTLER, Bond, Schoeneck & King, PLLC, Syracuse, New York, *for Defendant-Appellee.*

_____

DRONEY, *Circuit Judge*:

This appeal presents the question of whether a defendant may recover costs and damages from security posted by a plaintiff in obtaining a temporary restraining order ("TRO"), even though the

plaintiff later filed a notice of voluntary dismissal without prejudice, preventing a final adjudication on the merits. The U.S. District Court for the Southern District of New York (Furman, *Judge*) granted Plaintiff-Appellant U.S. D.I.D. Corp. ("D.I.D.") a TRO against Defendant-Appellee Windstream Communications, Inc. ("Windstream"). In doing so, the district court required D.I.D. to post security with the court clerk under Rule 65(c) of the Federal Rules of Civil Procedure (the "TRO security" or "Rule 65(c) security").[1] The district court later denied D.I.D.'s motion for a preliminary injunction and dissolved the TRO, concluding that D.I.D. failed to show a likelihood of success on the merits of the underlying suit. Soon afterward, D.I.D. filed a notice of voluntary dismissal without prejudice under Rule 41(a)(1)(A)(i) of the Federal

---

[1] Rule 65(c) employs the term "security," which includes bonds. Typically, bonds securing a TRO are posted by a surety, while "security" includes amounts deposited directly by the plaintiff into the court, as occurred here. As discussed below in the text, Rule 65.1 of the Federal Rules of Civil Procedure provides for an expedited procedure against sureties for such bonds.

Rules of Civil Procedure. Windstream then moved for an award of costs and damages from the TRO security. The district court found that awarding recovery from such security requires a final adjudication on the merits. It went on to conclude, however, that D.I.D.'s voluntary dismissal without prejudice functioned as a final adjudication on the merits and allowed recovery on the TRO security.

We agree that a district court may grant recovery from a TRO security after the plaintiff files a notice of voluntary dismissal. We hold that recovery from a TRO security requires only a determination that the defendant was wrongfully restrained, and not necessarily a final adjudication on the merits. Because the district court never made this specific determination, we VACATE the judgment of the district court and REMAND for the district court to determine whether, and for what time period, Windstream was

wrongfully restrained by the TRO, and to calculate the damages accordingly.

**BACKGROUND**

D.I.D. was, during the relevant time, a small, privately held business engaged in the resale of telecommunications services to "calling card" providers, "call centers," and similar businesses. D.I.D. in turn purchased telecommunications services from PAETEC Communications, Inc. ("PAETEC") under a long distance service calling agreement (the "Service Agreement" or the "Agreement") entered into on May 5, 2011. The Agreement contained a "limitations of service" clause, which stated that D.I.D. "may not purchase services under this retail service agreement and resell services to end users." J.A. 81. The Agreement also contained a termination provision, stating that "[a] party may terminate the Agreement on thirty (30) days' written notice if the other party materially breaches the Agreement . . . ." J.A. 80.

Windstream acquired PAETEC in late 2011. On March 27, 2012, Windstream informed D.I.D. that it had determined that D.I.D. was engaged in resale of Windstream's services, in violation of the Agreement's "limitations of service" clause. Windstream indicated that it would raise D.I.D.'s rates to what the parties later referred to as "interim" rates—between its lower "retail" rates and its higher "wholesale" rates—until June 1, 2012. Windstream stated that it would further increase D.I.D.'s rates to its "standard wholesale rates" after June 1. In response to Windstream's rate change notification, D.I.D. did not deny that it was engaged in the resale of Windstream's telecommunications services. Instead, D.I.D. alleged that Windstream's attempt to raise its rates constituted an impermissible restriction on the resale of telecommunications services in violation of federal law.

On May 3, 2012, Windstream sent D.I.D. a termination notice. Windstream asserted that its differential pricing structure for retail

customers and wholesalers was lawful, and that D.I.D. "specifically agreed to that distinction when [it] signed [its] retail contract." J.A. 116. Windstream indicated that it interpreted D.I.D.'s most recent response "as an improper refusal to pay the increased rates" and that it would terminate D.I.D.'s services five days later, on May 8, 2012. *Id.* Windstream later agreed not to disconnect D.I.D.'s service before May 21, 2012.

On May 21, 2012, D.I.D. filed a complaint and a motion for a TRO against Windstream in the U.S. District Court for the Southern District of New York. The district court granted the TRO that day, enjoining Windstream from terminating service to D.I.D. In issuing the order, the district court required that D.I.D. deposit $314,672.80, an amount equal to twice the charges on Windstream's most recent monthly invoice, as security into the registry of the district court.

The district court held a hearing on May 23, 2012, which it continued until June 4, 2012. At the June 4 hearing, the district court

determined that it would "allow Windstream to increase the rates to the wholesale rates effective June 1[]" until the hearing on D.I.D.'s motion for a preliminary injunction, scheduled for June 21, 2012. J.A. 629. Throughout the course of these hearings, the TRO remained in effect, and Windstream continued to provide telecommunications services to D.I.D.[2]

At the June 21, 2012 hearing, the district court denied D.I.D.'s motion for a preliminary injunction and dissolved the TRO. The district court concluded that although D.I.D. had established irreparable harm at the time the TRO was first issued, any risk of such harm that remained on June 21 resulted from D.I.D.'s failure to use the time when the TRO was in effect to obtain a new service provider. The district court further concluded that D.I.D. had failed

---

[2]  A TRO cannot exceed fourteen days unless the district court, "for good cause," extends it for another period of no more than fourteen days; a TRO lasting longer than twenty-eight days requires that the adverse party consent, as apparently occurred here. Fed. R. Civ. P. 65(b)(2).

to establish a likelihood of success on the merits of the underlying contractual dispute. The district court determined that D.I.D. was engaged in the resale of telecommunications services, and that this resale constituted a material breach of the Service Agreement. Finally, in response to D.I.D.'s contention that Windstream's May 3 notice of termination was ineffective because it provided that services would be terminated on May 8, before the end of the Agreement's thirty-day termination notice requirement, the district court concluded that this issue was moot. The district court reasoned that under New York law a termination notice that incorrectly identifies the termination date nevertheless becomes effective as of the correct termination date.

After issuing this ruling, the district court asked counsel for Windstream whether it objected to the return of the TRO security to D.I.D. Windstream's counsel responded: "No objection, your Honor, considering you are dissolving the TRO." J.A. 653. The district court

also noted that Windstream had not filed an answer to D.I.D.'s complaint, even though Windstream's answer was due that day. Windstream's counsel requested an extension, and the district court granted an extension until 5 p.m. the following day, June 22, 2012.

Early in the day on June 22, before Windstream filed its answer, D.I.D. filed a notice of dismissal without prejudice under Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. Three days later, Windstream sent a letter to the district court requesting recovery from the TRO security. In the letter Windstream's counsel acknowledged that he had not objected to the return of the TRO security at the June 21 hearing. He explained, however, that at the time of the hearing he was not aware that Windstream had just issued an invoice in the amount of $244,888.79 for services rendered between May 15, 2012 and June 14, 2012. Windstream requested that the district court direct the payment of that amount from the TRO security.

On January 7, 2013 the district court issued an opinion and order concluding that D.I.D.'s voluntary dismissal established that Windstream was entitled to recover from the TRO security. *See U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc. (U.S. D.I.D. II)*, 916 F. Supp. 2d 501 (S.D.N.Y. 2013).[3] The district court found that recovery on Rule 65(c) security—"a[t] least in this Circuit"—required a final adjudication on the merits. *Id.* at 506-07. The district court nevertheless concluded that a voluntary dismissal without prejudice may function as a final adjudication on the merits for the purpose of recovery on Rule 65(c) security. *Id.* at 508-11. Because D.I.D.'s decision to enter a voluntary dismissal without prejudice immediately followed the court's denial of D.I.D.'s motion for a

[3] The district court's opinion and order vacated its earlier July 13, 2012 opinion and order granting in part Windstream's request for recovery from the TRO security. *See U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc. (U.S. D.I.D. I)*, No. 12 Civ. 4023, 2012 WL 2878136 (S.D.N.Y. July 13, 2012). The district court's July 2012 opinion and order had held that a final adjudication on the merits was not necessary for recovery on the TRO security, *id.* at *3, and that its denial of D.I.D.'s motion for a preliminary injunction determined the wrongfulness of the TRO, *id.* at *4.

preliminary injunction and the dissolution of the TRO, and because there was no reason to explain D.I.D.'s voluntary dismissal other than the court's determination that D.I.D. was unlikely to prevail on the merits, the district court concluded that the dismissal qualified as a final adjudication on the merits. *Id.* at 514-15. Finally, the district court calculated the damages recoverable against the TRO security at $227,271.92, a figure that it reached based on the "interim" rates that Windstream charged for the period from May 22, 2012 (when the TRO was first entered) to May 31, 2012, and the wholesale rates for the period from June 1, 2012 to June 21, 2012 (when the TRO was dissolved). *Id.* at 515-16. This appeal followed.

**DISCUSSION**

D.I.D. raises four issues on appeal. First, D.I.D. argues that the district court lacked jurisdiction to order recovery from the TRO security because the district court's order followed D.I.D.'s voluntary dismissal without prejudice. Second, D.I.D. contends that Windstream is equitably estopped from asserting and has waived its

claim to recovery from the TRO security. Third, D.I.D. argues that the district court erred in concluding that D.I.D.'s voluntary dismissal established that Windstream had been wrongfully restrained by the TRO. Finally, D.I.D. asserts that, even if Windstream were entitled to recovery from the TRO security, the district court erred in calculating the amount based on the rates charged by Windstream, rather than the cost to Windstream of providing the telecommunications services. We address each argument in turn.

**I.      Jurisdiction to Order Recovery on the TRO Security**

D.I.D. argues that the voluntary dismissal of its complaint deprived the district court of subject matter jurisdiction to award recovery from the TRO security. We review jurisdictional questions *de novo. United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty.*, 712 F.3d 761, 767 (2d Cir. 2013).

Rule 41(a)(1) of the Federal Rules of Civil Procedure allows a plaintiff "one free dismissal." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397-98 (1990). The Rule "permits a plaintiff to dismiss an action without prejudice" so long as the plaintiff "files a notice of dismissal before the defendant files an answer or motion for summary judgment and . . . the plaintiff has never previously dismissed an action based on or including the same claim." *Id.* at 394 (internal quotation marks omitted). A voluntary dismissal without prejudice "vitiate[s] and annul[s] all prior proceedings and orders in the case, and terminat[es] jurisdiction over it for the reason that the case has become moot." *Oneida Indian Nation of N.Y. State v. Oneida Cnty.*, 622 F.2d 624, 629 n.7 (2d Cir. 1980) (citation and internal quotation marks omitted).

"It is well established," however, "that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell*, 496 U.S. at 395. A district court may, for instance, grant

an award of costs or attorney's fees or initiate contempt proceedings after a voluntary dismissal without prejudice. *Id.* at 395-96. When a district court addresses such collateral issues "after a voluntary dismissal[, it] does not deprive the plaintiff of his right under Rule 41(a)(1) to dismiss an action without prejudice" because the issues' resolution "does not signify a district court's assessment of the legal merits of the complaint." *Id.* at 396. This is true "[e]ven if a district court indicated that a complaint was not legally tenable or factually well founded for Rule 11 purposes," because "the resulting Rule 11 sanction would nevertheless not preclude the refiling of a complaint." *Id.*

Like the Rule 11 sanctions at issue in *Cooter & Gell*, a district court's awarding recovery from a Rule 65(c) security following the voluntary dismissal of a complaint "is not a judgment on the merits of an action." 496 U.S. at 396. True, a district court may express its views on the merits of the underlying claims in determining

whether a party was wrongfully restrained, just as it may express its views on the merits of the underlying claims in determining whether a complaint is frivolous and warrants sanctions. But that does not preclude the district court from considering collateral issues such as sanctions or recovery from a Rule 65(c) security.

Our conclusion is consistent with the policies underlying both Rule 41(a)(1) and Rule 65(c) of the Federal Rules of Civil Procedure. In *Cooter & Gell*, the Supreme Court observed that Rule 41(a)(1) was "designed to curb abuses of . . . nonsuit rules" by limiting the right to voluntary dismissal without prejudice to "the brief period before the defendant had made a significant commitment of time and money." *Id.* at 397. Similarly, Rule 11 operates to deter "[t]he filing of complaints, papers, or other motions without taking the necessary care in their preparation," which constitutes "a separate abuse of the judicial system, subject to separate sanction." *Id.* at 398.

Just as "the harm triggering Rule 11's concerns has already occurred" upon the mere filing of baseless papers "[e]ven if the careless litigant quickly dismisses the action," *id.*, a defendant may have already suffered harm while the TRO was in effect even if the TRO is subsequently dissolved. The Rule 65(c) security requirement is designed to "assure[] the [restrained] party that it may readily collect damages from the funds posted in the event that it was wrongfully [restrained], and that it may do so without further litigation and without regard to the possible insolvency of the plaintiff." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011). To achieve these purposes, a district court must retain jurisdiction to award costs and damages from Rule 65(c) security despite the plaintiff's entry of a voluntary dismissal under Rule 41(a)(1). Like the imposition of Rule 11 sanctions, moreover, an award of costs and damages from Rule 65(c) security "is useful to deter . . . misconduct." *Cooter & Gell*, 496 U.S. at 398. Discouraging

abuse of TROs is particularly important given the "drastic" character of the remedy, *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n*, 306 F.2d 840, 843 (2d Cir. 1962), which may be issued in an *ex parte* proceeding in which the restrained party lacks the opportunity to be heard, *see In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (per curiam).

Determining whether a defendant is entitled to recover from a Rule 65(c) security following a plaintiff's voluntary dismissal is also consistent with the "expeditious, summary procedure" provided for by Federal Rule of Civil Procedure 65.1. 11A Wright & Miller § 2972. Rule 65.1 permits a wrongfully enjoined or restrained party, by motion and without filing an independent action, to collect against a non-party surety on a TRO or injunction bond. Where a plaintiff has voluntarily dismissed its suit before a final adjudication on the merits, the defendant's recovery on the Rule 65(c) security would

similarly be sought by motion and adjudicated in a summary proceeding.

Accordingly, the issue of whether the defendant may recover against a Rule 65(c) security is collateral to the merits of the plaintiff's underlying claims. Because it is collateral, the district court retains jurisdiction to award recovery against the Rule 65(c) security after the plaintiff has filed a notice of voluntary dismissal.

**II.     Equitable Estoppel and Waiver**

D.I.D. also asserts that Windstream is either equitably estopped from asserting or has waived its claim for damages from the TRO security because Windstream's attorney stated at the June 21 hearing that he had "[n]o objection" to the release of the TRO security. J.A. 653. Where the facts are undisputed, a determination regarding waiver and estoppel is a question of law, reviewed *de novo. See Jarvis v. Ford Motor Co.*, 283 F.3d 33, 59 (2d Cir. 2002)

(considering waiver); *Chartier v. Marline Mgmt., LLC*, 202 F.3d 89, 93 (2d Cir. 2000) (considering estoppel).

The district court rejected D.I.D.'s equitable estoppel and waiver arguments, the former because it found that D.I.D. could not establish detrimental reliance. *U.S. D.I.D. I*, 2012 WL 2878136, at *3. We agree with the district court that D.I.D. failed to establish the detrimental reliance required for equitable estoppel. As for waiver, we conclude that Windstream's attorney's statement did not evince a clear and unequivocal intent to forgo recovery against the TRO security.

*A. Equitable Estoppel*

Equitable estoppel precludes a person from regaining property or its value where that person "makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it" and "the other in reliance upon the misrepresentation . . . so change[s] his position that it would be

unjust to deprive him of that which he thus acquired." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984) (quoting Restatement (Second) of Torts § 894(1) (1979)). "[A] hallmark of the doctrine is its flexible application . . . ." *Id.* "An essential element of equitable estoppel," however, "is detrimental reliance on the adverse party's misrepresentations." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011) (internal quotation marks, citations and alteration omitted).

We conclude later in this opinion that a recovery on Rule 65(c) security turns on a determination that the defendant was wrongfully restrained. Because Windstream's ability to recover on the TRO security did not depend on D.I.D.'s voluntary dismissal, and because D.I.D. does not identify any other actions that it took in reliance on Windstream's counsel's representations during the brief, four-day period between the June 21 hearing and Windstream's

request for costs and damages from the TRO security, we find that D.I.D. failed to establish detrimental reliance.

*B. Waiver*

Waiver is the "intentional relinquishment of a known right." *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999). Although we have recognized that waiver "may be inferred from the conduct of the parties," we have emphasized that "[t]he conduct said to constitute a waiver must be clear and unequivocal, as waivers are never to be lightly inferred." *Mooney v. City of N.Y.*, 219 F.3d 123, 131 (2d Cir. 2000) (internal quotation marks omitted). "We will infer a waiver only where the parties were aware of their rights and made the conscious choice, for whatever reason, to waive them." *Id.* (internal quotation marks omitted). "Mere negligence, oversight, or thoughtlessness does not create a waiver." 28 Am. Jur. 2d *Estoppel and Waiver* § 192 (2011).

We have little difficulty rejecting D.I.D.'s waiver argument. Although Windstream did indicate that it had "[n]o objection" to the release of the TRO security during the June 21 hearing, this brief colloquy included no mention of Windstream's right to recover damages from the TRO security before it was released. The remarks of Windstream's counsel, then, evince no conscious or unequivocal choice to forgo recovery from the TRO security. On the contrary, there is no reason to doubt counsel's representation that his remarks reflected his unawareness that Windstream had issued an invoice for services rendered during the time the TRO was in effect, and that this invoice had not been paid. Waiver "is an equitable doctrine based upon fairness and justice," which we use "to avoid a result where parties have conducted themselves in such a way as to make that result unfair." 31 C.J.S. *Estoppel and Waiver* § 86. That standard was not met here.

**III.    Determining Recovery on Rule 65(c) Security Following a Voluntary Dismissal Without Prejudice**

Rule 65(c) of the Federal Rules of Civil Procedure allows for recovery on posted security where the party has "been wrongfully enjoined or restrained." Citing our decision in *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049 (2d Cir. 1990), D.I.D. argues, and the district court held, that determining whether a defendant was "wrongfully restrained" requires a final adjudication on the merits. D.I.D. additionally argues that the district court erred to the extent it concluded that D.I.D.'s voluntary dismissal constituted the requisite final determination on the merits. We review "a district court's decision to grant or deny recovery against an injunction bond . . . for abuse of discretion," recognizing that "the court's discretion should be exercised in a manner consistent" with the presumption that "wrongfully enjoined parties are entitled to . . . recovery against the bond for provable damages." *Nokia Corp.*, 645 F.3d at 557. The "abuse of discretion" standard entails *de novo* review

for legal issues and clear error review for factual findings. *United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008).

### A. Whether Determining Wrongful Restraint Requires a Final Adjudication on the Merits

The Supreme Court has held that whether a party has "been wrongfully enjoined or restrained" is not always coextensive with a final adjudication on the merits. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 314, 317 (1999). In *Grupo Mexicano*, the plaintiffs, various investment funds, had purchased unsecured notes of the defendant, Grupo Mexicano de Desarrollo, S.A. ("GMD"), a Mexican company involved in the construction of a toll road sponsored by the Mexican government. *Id*. at 310. Due to a downturn in the Mexican economy, the Mexican government assisted various entities involved in the construction of the toll road, including GMD, by issuing guaranteed notes to them. *Id*. at 311. The problems in the Mexican economy persisted, GMD started to negotiate a restructuring of its debt, and reports began to circulate

suggesting that GMD was dissipating its most valuable assets—the guaranteed notes issued by the Mexican government—to the detriment of its creditors, including the investment funds. *Id*. at 311-12.

The investment funds brought suit in the U.S. District Court for the Southern District of New York to recover on their unsecured notes following GMD's default. *Id*. at 312. The district court granted a TRO and then a preliminary injunction prohibiting GMD from transferring the government-guaranteed notes. *Id*. at 312-13. While the interlocutory appeal of the preliminary injunction was pending, the district court granted summary judgment in favor of the investment funds and converted the preliminary injunction into a permanent injunction. *Id*. at 313. GMD ultimately chose not to appeal the grant of summary judgment or the permanent injunction, but continued with its appeal of the preliminary injunction. *Id*. at 313-14.

The Supreme Court agreed that the preliminary injunction should not have been issued, even though the plaintiffs prevailed on the merits. The Court explained that, in the usual case, the final injunction establishes the substantive validity of the preliminary injunction because "[t]he final injunction establishes that the defendant *should not have been engaging in the conduct that was enjoined*." *Id*. at 315 (emphasis in original). At times, however, "the substantive validity of the final injunction does *not* establish the substantive validity of the preliminary one," so the defendants may establish that "they *have* been harmed by the issuance of the unauthorized preliminary injunction—and hence *should* be able to recover on the bond—*even if* the final injunction is proper." *Id*. (emphasis in original). The Court concluded that *Grupo Mexicano* presented the latter type of case because the district court had enjoined the defendant's transfer of assets in contravention of "the historical principle that before judgment (or its equivalent) an

unsecured creditor [here, the investment funds] has no rights at law or in equity in the property of his debtor." *Id*. at 330.

Just as an injunction may have been improperly issued even though the plaintiff ultimately prevails on the merits, a defendant may have been properly enjoined even though the plaintiff ultimately loses on the merits. Several circuits have held, for instance, that, where a plaintiff acquires temporary relief to enforce an arbitration-grievance procedure required under a collective bargaining agreement, the defendant may not necessarily recover from the Rule 65(c) security even though it ultimately prevails in the arbitration process. *See Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. S.F. Newspaper Agency*, 89 F.3d 629, 634 (9th Cir. 1996); *Miscellaneous Drivers, Helpers, Heath Care & Pub. Emps. Union Local 610 v. Kroger Co.*, 858 F.2d 415, 416 (8th Cir. 1988); *Lever Bros. Co. v. Int'l Chem. Workers Union, Local 217*, 554 F.2d 115, 120-21 (4th Cir. 1976). These decisions reason that a grievance-arbitration

procedure in a collective bargaining agreement establishes a procedural right distinct from the underlying merits of any given labor dispute. Thus, temporary relief enforcing this procedural right may be properly issued even if the defendant ultimately prevails on the merits in arbitration. *See Newspaper & Periodical Drivers' & Helpers' Union*, 89 F.3d at 634.

Although resolving the propriety of temporary relief can be distinct from the final adjudication on the merits, as in *Grupo Mexicano*, in the usual case the wrongfulness inquiry "*generally . . . must be resolved by a trial on the merits.*" *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 396 (1981) (emphasis added); *see also Guzman v. Local 32B-32J, Serv. Emps. Int'l Union*, 72 F.3d 260, 263 (2d Cir. 1995) (finding that the claim "should be resolved only after the District Court has conducted a full evidentiary hearing" where the defendant's claim to recovery from the injunction bond turned on whether the defendant was entitled to refrain from the conduct

compelled by injunction). That is because it is the final adjudication on the merits, after the full presentation of the parties' cases, that ordinarily establishes whether the defendant should not have been engaging in the conduct that was enjoined. *See Grupo Mexicano*, 527 U.S. at 315. TRO and preliminary injunction proceedings do not typically give the parties "the benefit . . . of a full opportunity to present their cases []or . . . a final judicial decision based on the actual merits of the controversy." *Camenisch*, 451 U.S. at 396.

Our decision in *Blumenthal* is illustrative. There, the district court issued a preliminary injunction prohibiting the two plaintiffs, former Merrill Lynch brokers, from soliciting the firm's clients using its customer records. 910 F.2d at 1051. Following arbitration proceedings before the New York Stock Exchange, the arbitrator found that the plaintiffs had the right to use the customer records and that the injunction should be lifted. *Id.* The district court, however, denied recovery by the plaintiffs against the injunction

bond. *Id.* We reversed and held that the plaintiffs were entitled to recover costs and damages against the Rule 65(c) bond. *Id.* at 1056. "In light of the ultimate decision on the merits by the arbitrators," we concluded, "Merrill Lynch was not entitled to the injunction it received and that [the plaintiffs] had at all times the right to do business with their Merrill Lynch clients." *Id.* at 1055.

That a trial on the merits is usually required to determine whether the defendant was entitled to engage in the conduct that was enjoined is true irrespective of whether the defendant seeks recovery on security posted to secure a TRO or a preliminary injunction. In both situations it is only upon full presentation of the parties' evidence that it may typically be determined whether the defendant should have been restrained or enjoined. But the need for a final adjudication on the merits does not apply where, as here, a plaintiff has voluntarily dismissed its suit following the order for temporary relief. By voluntarily dismissing its suit, the plaintiff has,

in effect, abandoned its right to "a full opportunity to present [its] case[] [or] of a final judicial decision based on the actual merits of the controversy." *Camenisch*, 451 U.S. at 396. Having decided that its claims should not be pursued to trial, the plaintiff can hardly insist that the defendant have no opportunity to establish that it was wrongfully restrained.

This holding resolves the district court's well-founded concerns over the potential abuse of TROs in this context. If a final adjudication on the merits is necessary to award recovery on a TRO security, "[a] plaintiff who voluntarily dismisses an action after a [TRO] has been issued reaps the benefit of the [TRO] and, at the same time, deprives the defendant of an opportunity to establish that the [TRO] ought not to have been granted." *U.S. D.I.D. II*, 916 F. Supp. 2d at 511 (quoting *Belfer v. Minko*, No. 05 CV 02473, 2008 WL 163615, at *2 (N.D. Ohio Jan. 17, 2008)). Apparently motivated by that concern, a number of district courts—including the district

court here—have concluded that a voluntary dismissal may operate as a final adjudication on the merits for purposes of recovery from security posted to secure a TRO.[4] However, by rejecting the premise that a final adjudication on the merits is always required for recovery on Rule 65(c) security, our holding resolves this problem without redefining a "dismissal without prejudice" as its "opposite," an "adjudication upon the merits." *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001).

In sum, we reject D.I.D.'s assertion and the district court's holding that recovery on Rule 65(c) security always requires a final

---

[4] *See Belfer v. Minko*, No. 05 CV 2473, 2008 WL 163615, at *1 (N.D. Ohio Jan. 17, 2008) (plaintiffs posted bond upon granting of TRO; hearing on preliminary injunction never occurred because parties entered into settlement negotiations); *Almoss, Ltd. v. Furman*, No. 06 Civ. 8234, 2007 WL 1975571, at *1-*2 (S.D.N.Y. July 6, 2007) (after plaintiffs discontinued action, defendants sought recovery from Rule 65(c) bond for costs incurred in vacating TRO); *LaSalle Capital Grp. v. Alexander Doll Co.*, 95 C 1640, 1995 WL 584429, *1 (N.D. Ill. Oct. 2, 1995) (district court "issued and twice continued a temporary restraining order" before discharging it); *Pace v. Ross*, No. 78 Civ. 5212, 1981 U.S. Dist. LEXIS 11351, at *10 (S.D.N.Y. Mar. 13, 1981) (plaintiffs voluntarily dismissed action under Rule 41(a)(1) after district court denied plaintiffs' motion for a preliminary injunction and dissolved the TRO).

adjudication on the merits. Following the voluntary dismissal of a plaintiff's complaint, recovery on Rule 65(c) security requires only a determination that the defendant was "wrongfully restrained."

*B. Whether Windstream Was Wrongfully Restrained*

Windstream argues that, even if the district court erred in reasoning that D.I.D.'s notice of voluntary dismissal established the wrongfulness of the TRO, the district court's denial of D.I.D.'s motion for a preliminary injunction and dissolution of the TRO establishes that Windstream was wrongfully restrained. This argument has some merit. When a plaintiff files a voluntary dismissal under Rule 41(a)(1), the district court's denial of the plaintiff's motion for a preliminary injunction may establish that the TRO should not have been granted and the defendant was wrongfully restrained by a preceding TRO. *Cf. Middlewest Motor Freight Bureau v. United States*, 433 F.2d 212, 243 (8th Cir. 1970) ("Where a party fails to prove grounds sufficient for the grant of an

interlocutory injunction, he at the same time shows that the temporary restraining order should not have been granted, at least to the extent of rendering him liable in restitution for benefits received under the temporary restraining order."); *Qualcomm, Inc. v. Motorola, Inc.*, 185 F.R.D. 285, 288 (S.D. Cal. 1999) ("When a court denies a preliminary injunction after it has granted a contested TRO, the restrained party has been 'wrongfully restrained,' given that a TRO is only intended to last until a preliminary injunction hearing is held.").

Yet, just as "the substantive validity of the final injunction does *not* [always] establish the substantive validity of the preliminary one," *Grupo Mexicano*, 527 U.S. at 315 (emphasis in original), denial of a motion for a preliminary injunction and dissolution of a TRO will not always establish that the defendant was wrongfully restrained. For instance, a plaintiff may fail to prove at the preliminary injunction stage that she will suffer irreparable

harm from the defendant's conduct or that the public interest weighs in favor of an injunction. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). If the denial of the preliminary injunction is based on some ground other than the lawfulness of the defendant's conduct, then the denial of the preliminary injunction may not be sufficient to show that the defendant was wrongfully restrained. It may also be that although a TRO was justified for a portion of the time period it was in effect, it was not justified for the entire period.

After a district court has granted a TRO, the burden remains on the plaintiff "to show that [it is] entitled to a preliminary injunction." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 443 (1974). Thus, where a district court dissolves a TRO without granting the plaintiff's motion for a preliminary injunction, a plaintiff seeking to defeat the defendant's request for recovery from the TRO security

bears the burden of establishing that the defendant was not wrongfully restrained and is, therefore, not entitled to recover from the TRO security. A plaintiff may satisfy this burden by showing that the defendant did not have the legal right to engage in the conduct restrained while the TRO was in effect, notwithstanding the denial of the preliminary injunction. If the plaintiff fails to make this showing, then the dissolution of the TRO likely establishes that the defendant was wrongfully restrained, and the defendant consequently enjoys "a presumption in favor of recovery against the [security] for provable damages." *Nokia Corp.*, 645 F.3d at 557.

The effect of the thirty-day notice of termination provision in the parties' contract here illustrates the complexities of this analysis. When the TRO was first issued, it performed two functions. First, the TRO prevented Windstream from terminating service based on D.I.D.'s refusal to pay the higher rates that Windstream had imposed on D.I.D. Second, the TRO prevented Windstream from

cutting off service before June 3, the last day of the Service Agreement's thirty-day termination notice period.

The district court effectively rejected the first basis for the TRO when it found, at the June 21, 2012 preliminary injunction hearing, that D.I.D. had failed to establish a likelihood of success on the merits of the underlying contractual dispute about D.I.D.'s resale of Windstream's services. That determination, however, does not establish that Windstream was wrongfully restrained for the period up until June 3 when the TRO arguably functioned to enforce the thirty-day termination notice clause. The district court declined to address D.I.D.'s contention that Windstream's May 3 notice of termination violated the termination notice clause, concluding that the issue had become moot because, at the time of the hearing, thirty days had passed since the notice of termination.

The district court's finding that D.I.D. was unlikely to prevail on the merits of its underlying contractual claim is irrelevant,

however, to the validity of the TRO in enforcing the termination notice provision. Such a provision provides a window of time during which a business may locate a different service provider, thereby preventing disruption in the business's operations that could result in "an irreparable loss of customer goodwill." *Eastman Kodak Co. v. Collins Ink Corp.*, 821 F. Supp. 2d 582, 587 (W.D.N.Y. 2011) (granting preliminary injunction to enforce contractual termination notice provision). Although the district court found at the June 21 hearing that any remaining risk of irreparable harm derived from D.I.D.'s failure to use the time the TRO afforded to locate a new telecommunications service provider, the district court made clear that, when the TRO was initially issued, D.I.D. had established a risk of irreparable harm if Windstream's services were so abruptly cut off.

Although the enforcement of the thirty-day termination notice provision may have been an appropriate basis for the initial issuance

of the TRO, whether Windstream may recover from the TRO security for unpaid charges for that period requires a different analysis. A wrongfully restrained defendant may recover against a TRO security "to cover the costs and damages incurred as a result of complying with a wrongful [TRO]." *Nokia Corp.*, 645 F.3d at 560. The Rule 65(c) security, however, "is not security for the payment of damages on an ultimate judgment on the merits." *Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 21 (1st Cir. 2007); *see also Lever Bros. Co. v. Int'l Chem. Workers Union, Local 217*, 554 F.2d 115, 120 (4th Cir. 1976) ("[I]t is settled that the recoverable damages under such a bond are those that arise from the operation of the injunction itself and not from damages occasioned by the suit independently of the injunction."). Consequently, if, for a portion of the time during which the TRO was in effect the TRO functioned to enforce the termination notice provision, then the unpaid service charges incurred during that portion of time are not damages that

Windstream suffered as a result of complying with a wrongful TRO. Windstream cannot claim damages based on wrongful restraint when it was not entitled to take the action that was restrained. The unpaid charges represent a risk that Windstream accepted when it agreed to the thirty-day termination notice provision. As a result, even though Windstream was restrained by the TRO from terminating services before June 3, the district court may conclude on remand that Windstream would not be entitled to recover from the TRO security for that period.

The distinction is significant because of the implications that recovery from Rule 65(c) security has for other creditors of the plaintiff. Because the security requirement enables the defendant to recover costs and damages "without regard to the possible insolvency of the" plaintiff, it effectively gives the defendant priority over the plaintiff's other creditors. *Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989). Such priority makes sense where the

costs and damages were incurred as a result of a wrongful TRO or preliminary injunction, because the Rule 65(c) security functions as "the moving party's warranty that the law will uphold the issuance of the injunction." *Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, *J.*, concurring in part and concurring in the judgment). Where the damages suffered by a defendant did not result from being wrongfully restrained or enjoined, however, the defendant should not enjoy priority over other creditors as a result of the Rule 65(c) security, even if the defendant might be able to recover for the damages via an independent action against the plaintiff.

The district court's award of recovery on the TRO security included damages for Windstream during the thirty-day notice period. As a result, we also remand for the purpose of revisiting that portion of the award.

**IV.    Calculating Recovery on the Rule 65(c) Security**

For its final argument, D.I.D. contends that it was improper for the district court to calculate damages on the TRO security based on the "invoiced rates and charges." D.I.D. asserts that Windstream should not be permitted to recover "a windfall profit" for services that Windstream would not have provided in the absence of the TRO. Under D.I.D.'s approach, the district court would base its damages calculation not on the amount that Windstream charged, but rather on the actual cost to Windstream of providing such services. We review an award of damages on Rule 65(c) security for abuse of discretion, which encompasses *de novo* review for legal issues and clear error review for factual findings. *See Nokia Corp.*, 645 F.3d at 557; *Legros*, 529 F.3d at 474.

Rule 65(c) does not define the "damages" that are recoverable from Rule 65(c) security. A number of courts and commentators, however, have indicated that restitution can provide an appropriate

measure of damages. *See Middlewest*, 433 F.2d at 244 ("Restitution is the proper remedy to return the parties to the position they would have been in had the [defendant] . . . not been judicially restrained."); *Littell v. Morton*, 369 F. Supp. 411, 419 (D. Md. 1974) ("[U]nder the principle of 'restitution' a party who obtains benefits from an improperly issued injunction, that he would not have received but for the injunction, has a duty to restore that benefit to those who have been injured by the injunction."), *aff'd*, 519 F.2d 1399 (4th Cir. 1975); *see also* 11A Wright & Miller § 2973 (noting, in the context of Rule 65.1 bonds, that "the bond covers incidental and consequential costs and either the losses the unjustly restrained party has suffered while wrongfully being prohibited from engaging in certain activities *or the complainant's unjust enrichment* while his adversary was improperly enjoined" (emphasis added)). An award of restitution, a traditionally equitable form of relief, *see Mertens v. Hewett Assocs.*, 508 U.S. 248, 256 (1993), accords with Rule 65(c)'s

"origin in early equity practice," *Nokia Corp.*, 645 F.3d at 557 (quoting *Commerce Tankers Corp. v. Nat'l Mar. Union of Am.*, 553 F.2d 793, 800 (2d Cir. 1977)).

We agree that where a defendant is wrongfully restrained by being compelled to provide services that it was not legally required to provide, the district court may employ a restitutionary measure to calculate damages recoverable against the Rule 65(c) security. "The restitutionary goal is to prevent unjust enrichment of [one party] by making him give up what he wrongfully obtained from [another party]." 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 1.1 (2d ed. 1993). Accordingly, a restitutionary approach bases damages on the "objective or market value" of the *benefit* unjustly acquired by the plaintiff under the wrongful TRO, rather than the value of the *loss* sustained by the defendant. *Id.* § 4.1(1). Several considerations lead us to conclude that a restitutionary approach to damages calculation will normally be appropriate where a plaintiff acquires a wrongful

TRO that compels the defendant to provide the plaintiff with services.

First, a restitutionary approach to damages calculation prevents an inequitable benefit transfer to a party that acquires the wrongful TRO. The market value of services typically exceeds the cost of providing them, because the market value includes the provider's profit margin. Hence, if a defendant that is compelled to provide services under a TRO could recover only the costs that it incurred, the plaintiff would receive a discount not enjoyed by the defendant's other customers. A restitutionary award, therefore, prevents a plaintiff from being able to use a wrongful TRO to compel a defendant to provide the plaintiff with terms and prices not available to other customers. *Cf. Kansas ex rel. Stephan v. Adams*, 705 F.2d 1267, 1269 (10th Cir. 1983) (observing that the "extent" of damages awarded from Rule 65(c) security "is in the discretion of

the district court and is based upon considerations of equity and justice").

Second, a restitutionary approach in these circumstances will normally be more administrable than an approach based on the costs to the defendant. The market value of services can usually be readily determined. By contrast, to determine the cost that a defendant incurs in providing services, a district court may have to resolve difficult factual questions, likely necessitating extensive discovery. We think it unwise to require such a burdensome inquiry to resolve the collateral issue of recovery from a TRO security.

Finally, a restitutionary approach to damages calculations accords with the function of Rule 65(c) security. Rule 65(c) security can "be viewed as a contract in which the court and plaintiff 'agree' to the [security] amount as the 'price' of a wrongful injunction." *Continuum Co.*, 873 F.2d at 803 (citation omitted). In accordance with this function, courts have repeatedly held that, in the absence of bad

faith on the plaintiff's part, "the [security] provides the plaintiff with notice of the maximum extent of its potential liability." *Nokia Corp.*, 645 F.3d at 557; *see also Blumenthal*, 910 F.2d at 1054; *Continuum Co.*, 873 F.2d at 803; *Coyne-Delany Co. v. Capital Dev. Bd. of the State of Ill.*, 717 F.2d 385, 393 (7th Cir. 1983); *Int'l Ladies' Garment Workers' Union v. Donnelly Garment Co.*, 147 F.2d 246, 253 (8th Cir. 1945). Similarly, because the market value of a given service is typically publicly known, a restitutionary approach to a damages calculation will usually allow the plaintiff to predict its potential liability and make an informed "business judgment that it [i]s willing to incur the 'cost' of a possibly wrongful" TRO. *Global Naps, Inc.*, 489 F.3d at 21. Here, for instance, D.I.D. could readily ascertain the market value of the services it was obtaining from Windstream, and so could easily predict its liability if the TRO was found to be wrongful.

We believe that the district court's approach in this case, in basing its damages calculation on the rates that Windstream charged

for services rather than the cost of providing services, is consistent with a restitutionary approach to damages calculation. We identify, however, two issues that we believe must be addressed on remand should the district court determine that Windstream was wrongfully restrained.

First, the district court allowed Windstream to recover damages for the period from June 1, 2012 to June 21, 2012 based on the "wholesale" rates. Although Windstream described the "wholesale" rates as "standard," J.A. 86, the district court did not determine that these rates reflected the market value of Windstream's services.[5] And although the plaintiff bears the burden of showing that a subsequently dissolved TRO was not wrongfully issued, the burden of "demonstrat[ing] that the damages sought

---

[5] The district court required Windstream to file a supplemental declaration providing support for its claim for damages on the security. However, that declaration did not demonstrate that the indicated rates reflected their market value.

were proximately caused by the wrongful injunction" lies on the defendant seeking to recover on the security. *Nokia Corp.*, 645 F.3d at 559. On remand, therefore, to recover damages from the TRO security based on the wholesale rates, Windstream must establish that the wholesale rates represent the market value of the services Windstream was wrongfully compelled to provide to D.I.D. while it was wrongfully restrained.[6]

Second, the district court must determine the amount of damages that may be recovered from the TRO security. In particular, the district court must determine whether the provision of services by Windstream during the thirty-day termination notice period may result in damages recoverable from the TRO security.

---

[6] The district court awarded damages for services provided from May 21 to June 1 based on the "interim" rates that Windstream imposed via its March 27 letter. If the district court concludes that, notwithstanding the thirty-day termination notice period provided for in the Agreement, recovery from the TRO bond is appropriate beginning May 21, it will also need to evaluate the appropriate rates for May 21 to June 1.

**CONCLUSION**

For the foregoing reasons, we VACATE the order of the district court. We REMAND the case to the district court to: 1) determine whether and for which portions of the time when the TRO was in effect Windstream was wrongfully restrained; 2) determine what rates are justified as a measure of restitutionary damages; and 3) recalculate the damages recoverable from the TRO security.